**2015-1664**
**(Serial No. 12/912,410)**

# United States Court of Appeals
# for the Federal Circuit

IN RE RAY SMITH AND AMANDA TEARS SMITH

*Appellants.*

---

*Appeal from the United States Patent and Tradek4rk Office,*
*Board of Patent Appeals and Interferences.*
*U.S. Patent Application Serial No. 12/912,410*

---

## BRIEF FOR APPELLANTS

Mark A. Litman
Mark A. Litman & Associates, P.A.
7001 Cahill Road, Suite 15A
Edina, MN 55439
Telephone (Cell) 612-965-3755
Facsimile: 952-832-9191
malpatlaw@aol.com

*Attorneys for Appellants*

Filed: June 23, 2015
Corrected:  June 25, 2015

## CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellant Ray Smith and Amanda Tears Smith certifies as follows:

1.      The name of every party represented by us is:

      Ray Smith and Amanda Tears Smith


2.      The name of the real party in interest represented by us is:

      Ray Smith and Amanda Tears Smith (Joint Inventors)


3.      The parent corporations and publicly held companies that own 10 percent or more of the stock of the party represented by us are:

      None

4.      The names of all law firms and the partners or associates that appeared for the party now represented by us in the trial court, or are expected to appear in this Court are:

      Mark A. Litman
      Mark A. Litman & Associates, P.A.
      7001 Cahill Road, Suite 15A
      Edina, MN 55439
      Telephone (Cell) 612-965-3755
      Facsimile: 952-832-9191
      malpatlaw@aol.com
      Attorneys for Appellants

# TABLE OF CONTENTS

*Page*

CERTIFICATE OF INTEREST ............................................................................ i

TABLE OF AUTHORITIES ............................................................................. v

STATEMENT OF RELATED CASES ............................................................ viii

JURISDICTIONAL STATEMENT ...................................................................... 1

STATEMENT OF THE ISSUES......................................................................... 2

STATEMENT OF THE TECHNOLOGY FACTS ................................................ 4

STATEMENT OF THE CASE.............................................................................. 7

SUMMARY OF THE ARGUMENT ................................................................... 8

STANDARD OF REVIEW ................................................................................. 9

ARGUMENTS ................................................................................................. 10

    Factual Background for the Present State of Law for Patent-Eligible
    Subject Matter under 35 U.S.C. 101 ...............................................................10

    Legal Background ...........................................................................................12

DETAILED ARGUMENTS .............................................................................. 15

  I.  In *Alice Corporation Pty. Ltd. v. CLS Bank International, et al*., 134
      S. Ct. 2347 (2014), the Supreme Court failed to provide adequate
      guidelines for the determination of patent-eligible subject matter for
      method claims with respect to transformative steps on articles using
      apparatus constituting more than a generic computer. ...................................15

      ABSENCE OF ACTUAL GUIDANCE IN DEFINING "ABSTRACT
      IDEAS" UNDER THE U.S. SUPREME COURT DECISIONS,
      PARTICULARLY, ALICE ........................................................................15

II.  The Patent Office Examining Corps has improperly applied and even extended the inadequate guidelines suggested in Alice Corporation Pty. Ltd. v. CLS Bank International, et al., 134 S. Ct. 2347 (2014) to encompass subject matter that should be considered patent-eligible under 35 USC §101. ....................................................................21

IMPROPER INTERPRETATION OF ALICE AND THE GUIDELINES BY THE EXAMINING CORPS IS CLEAR LEGAL AND FACTUAL ERROR..........................................................................21

III.  The USPTO Board of Patent Trials and Appeals improperly applies extreme and faulty analogies to apply Alice Corporation Pty. Ltd. v. CLS Bank International, et al., 134 S. Ct. 2347 (2014) to patent-eligible subject matter....................................................................22

FAILED ANALOGIES IN COMPARING PHYSICAL PROCESS TO "RULES PER SE" IN ATTEMPTING TO BRING CLAIMED SUBJECT MATTER INTO THE SPHERE OF U.S. SUPREME COURT DECISIONS....................................................................22

IV.  The Deputy Commissioner For Patent Examination Policy issued faulty guidelines as "New Interim Patent Subject Matter Eligibility Examination Instructions" that had no legal authority under either Alice, supra (MEMORANDUM DATE: June 25, 2014) or Bilski v. Kappos, 130 S.Ct. 3218; 561 U.S. 593, 2010.  The application of these guidelines during Patent examination was legal error...................................26

THE GUIDELINES ISSUED BY THE DEPUTY COMMISSIONER FOR PATENT EXAMINATION POLICY EXTENDED THE LEGAL SCOPE OF SUPREME COURT CASES WITHOUT MERIT..................................................................................26

V.  The decision by the USPTO Board of Patent Trials and Appeals failed to identify limitations in the claimed subject matter on appeal that was directed towards an abstract idea and therefore patent-eligible.  The subject matter was improperly reviewed according to I), II), III) and IV), above and by assuming that the claimed subject matter was reviewable under authority of Alice, supra as directed towards an abstract idea. ..............................................................29

THE DECISION EVEN FAILED TO COMPLY WITH THE PTO GUIDELINES ON APPLICATION OF *ALICE,* EVEN AS THOSE GUIDELINES WERE IN ERROR AND EXTENDED THE LEGAL SCOPE OF SUPREME COURT CASES WITHOUT JUSTIFICATION ........................................................................29

FACTUAL BACKGROUND FOR ANALYSIS ..........................................30

VI. Did the decision by the USPTO Board of Patent Trials and Appeals fail to consider the physical nature of steps performed in the process in assuming the claimed method to be an abstract idea, AND THEREFORE was the subject matter improperly examined accordng to I), II), III) and IV), above and by such improper review was legal error committed by assuming that the claimed subject matter was reviewable under authority of *Alice, supra* as directed towards an abstract idea? ....................................................................................32

FAILURE TO IDENTIFY SUBJECT MATTER CLAIMED AS AN ABSTRACT IDEA AND THEREFORE WITHIN THE PROVINCE OF SUBJECT MATTER REVIEWABLE UNDER *ALICE* AS PATENT-INELIGIBLE .................................................................................32

The Guidelines Are Arbitrary and Do Not Have Effect of Law or Rules. The 35 U.S.C. § 101 Guidelines Exceed Patent Office Authority as Being Substantive Extensions of Law ......................................38

REQUEST FOR DECISION ON ISSUES ............................................ 42

CONCLUSION ...................................................................................... 44

ADDENDUM

Decision on Request for Rehearing ............................................. A4

Decision on Appeal...................................................................... A9

Decision on Reconsideration – Denied ...................................... A20

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

# TABLE OF AUTHORITIES

*Page(s)*

## Cases

*Alice Corporation Pty. Ltd. v. CLS Bank International, et al.,*
  134 S. Ct. 2347 (2014) ................................................................ passim

*Animal Legal Def. Fund v. Quigg,*
  932 F.2d 920 (Fed. Cir. 1991) ............................................................39

*Association for Molecular Pathology v. Myriad Genetics,*
  569 U.S.____(2013) .................................................................. 10, 34

*Astra v. Lehman,*
  71 F.3d 1578 (Fed. Cir. 1995) ............................................................41

*Bilski v. Kappos,*
  130 S.Ct. 3218; 561 U.S. 593, (2010) ....................................... passim

*eBay Inc. v. MercExchange, L.L.C.,*
  547 U.S. 388 (2006) .........................................................................13

*FEC v. Democratic Senatorial Campaign Comm.,*
  454 U.S. 27 (1981) ............................................................................41

*Gen. Elec. Co. v. Gilbert,*
  429 U.S. 125, 141 & n.20 (1976) ......................................................40

*In re Gartside,*
  203 F.3d 1305, 1053 (Fed. Cir. 2000) ..................................................9

*In re Van Ornum,*
  686 F.2d 937 (C.C.P.A. 1982) ...........................................................39

*In re Zurko,*
  142 F.3d 1447 (Fed. Cir. 1998) ...........................................................9

*Merck & Co. v. Kessler,* /
   80 F.3d 1543 (Fed. Cir. 1996)...........................................................................40

*Parker v. Flook,*
   437 U.S. 584 (1978) ......................................................................... 17, 18

*Paul N. Ware, et al. v. Abercrombie & Fitch Stores, Inc., et al.*
   Civil Action No. 4:07-cv-122  (N.D. Ga. June 19, 2007)....................................13

*Rubber-Tip Pencil Co. v. Howard,*
   20 Wall. 498 (1874) ......................................................................................17

*State Street Bank & Trust Co. v. Signature Fin, Group, Inc.*
   149 F.3d 1368 (Fed, Cir. 1998)...........................................................................13

## Statutes, Rules and Regulations

28 U.S.C. § 1295(a)(4)(A) ...................................................................................1

28 U.S.C. § 2107(b) ...........................................................................................1

35 U.S.C. §101 .......................................................................................... passim

35 U.S.C. §112(a) ............................................................................................15

35 U.S.C. § 141 ...............................................................................................1

35 U.S.C. § 142 ...............................................................................................1

37 C.F.R. § 1.304 ............................................................................................1

42 U.S.C. § 2000e- 12(a) ..................................................................................40

Fed. Cir. Rule 15(a)(1).......................................................................................1

vi

## Other Authorities

2 William C. Robinson, The Law of Patents 8-9
    (Clark Boardman Co. 1971) (1890) ....................................................39

2nd Interim Guidelines, published as Federal Register/Volume 75,
    No. 143/Tuesday July 27, 2010 ..........................................................19

Darren Cahr & Ira Kalina, Of PACs and Trolls: How the Patent
    Wars May Be Coming to a Hospital Near You,
    19 Health Lawyer 15, 16 (Oct. 2006) ..................................................14

Federal Register / Vol. 75, No. 143 / Tuesday, July 27, 2010 / Notices,
    pp 43922-43928, A311-317 the decision and the USPTO fail to respect
    Appellants' extensive evidence to show compliance with the USPTO
    guidelines and is an error in law and fact. ................................... 20, 38

First Interim Guidance Standards (published August 24, 2009),
    Off. Gaz. Pat. & Trademark Office, FROM: Andrew H. Hirshfeld,
    Deputy Commissioner for Patent Examination Policy, Effective Today:
    New Interim Patent Subject Matter Eligibility Examination Instructions") .......11

Heinlein, Robert A., The Moon is a Harsh Mistress,
     G.P. Putnam's Sons, New York, N.Y. 1966, p.11) ...........................14

Herbert C. Wamsley, The Rulemaking Power of the Commissioner
    of Patents and Trademarks (pt. 2), 64 J. Pat. Off. Soc'y 539 (1982) ..................29

I. G. Barbour, Issues in Science and Religion (New York: Harper, 1966)
    The Investigation of Self-generated Analogies for Pre-service Chemistry
    Teachers (Article written in Chinese) Ya-Chun CHUN, Chinese Journal of
    Science Education, Vol. 15 No. 3, Pages 265 - 294, 2007 ..................................15

Interim Guidance Standards (published July 27, 2010),
    Off. Gaz. Pat. & Trademark Office.......................................................12

Mark A. Litman, Deficiencies in the Decision and USPTO
    Application of Mayo Collaborative Services, d.b.a.
    Mayo Medical Laboratories, LLC v. Prometheus Laboratories, Inc.,
    J.P.T.O.S, 95, No. 1, 2013 ..................................................................16

## STATEMENT OF RELATED CASES

Neither Appellants nor their counsel are aware of any pending Appeals or Court litigation encompassing the same parties, subject matter and/or issues.

# JURISDICTIONAL STATEMENT

This Court has exclusive jurisdiction over the present appeal under 28 U.S.C. § 1295(a)(4)(A) and 35 U.S.C. § 141. The present appeal is from a Decision on Appeal by the Board of Patent Appeals and Interferences of the United States Patent and Trademark Office affirming the final rejection of the claim submitted by Appellant in the United States Patent Application Serial No. 12/912,410. The date of the Decision on Appeal by the Board, which is an appealable final order, is 28 January 2015. A Notice of Appeal to this Court was timely filed and served on the Solicitor for the United States Patent and Trademark Office on April 1, 2015, pursuant to 35 U.S.C. § 142, 37 C.F.R. § 1.304, 28 U.S.C. § 2107(b), and Fed. Cir. Rule 15(a)(1).

# STATEMENT OF THE ISSUES

The generic issue in this Appeal is whether or not the pending rejected method claims of U.S. Patent Application Serial No. 12/912.410 titled "Exclusively Match Symbol Video Games" are patent-eligible subject matter under 35 U.S.C. 101, particularly with respect to the law under *Alice Corporation Pty. Ltd. v. CLS Bank International, et al.*, 134 S. Ct. 2347 (2014).

Specific issues under the generic issue include:

1)    What is the scope of application of *Alice Corporation Pty. Ltd. v. CLS Bank International, et al.*, 134 S. Ct. 2347 (2014) with respect to methods involving physical components, especially non-computer components?

2)    Did the USPTO issue guidelines for determination of patent-eligible subject matter that exceeded the scope of application of both 35 U.S.C. 101 and *Alice Corporation Pty. Ltd. v. CLS Bank International, et al.*, 134 S. Ct. 2347 (2014) as "New Interim Patent Subject Matter Eligibility Examination Instructions" that had no legal authority under either *Alice, supra* or *Bilski v. Kappos*, 130 S.Ct. 3218; 561 U.S. 593, 2010, and was the application of these guidelines during Patent examination legal error?

3)      Did the USPTO Board of Patent Trials and Appeals improperly apply extreme and faulty analogies to apply *Alice Corporation Pty. Ltd. v. CLS Bank International, et al.*, 134 S. Ct. 2347 (2014) to patent-eligible subject matter without identifying patent-ineligible subject matter in claims?

4)      Did the decision by the USPTO Board of Patent Trials and Appeals fail to identify actual limitations in the claimed subject matter on appeal that was directed towards an abstract idea and therefore patent-ineligible and provide legal authority for determining that subject matter to be an abstract idea?

5)      Did the decision by the USPTO Board of Patent Trials and Appeals fail to consider the physical nature of steps performed in the process in assuming the claimed method to be an abstract idea, and therefore was the subject matter improperly examined according to 1), 2), 3) and 4), above and by such improper review was legal error committed by assuming that the specifically claimed subject matter was reviewable under authority of *Alice, supra* as directed towards an abstract idea?

## STATEMENT OF THE TECHNOLOGY FACTS

Blackjack (or Twenty-one) is one of the two most significant revenue-producing playing card-based wagering games banked by casinos (the other being baccarat).  Because the casino advantage and marginal profits are slight with perfect player strategy (about 1.5% for blackjack), variations on blackjack, side bets and other events related to blackjack are offered which may attract additional players, alter the house advantage towards the house's favor and increase house revenue.  To provide security to the game, movement of playing cards, positioning of cards and wagers must be physically exact, and therefore a physical process transforming a set of playing cards is legally required during the wagering events. **A374-375¶8-9**   The present physical process for executing a wagering event using a blackjack format is defined in Claim 1 in U.S. Patent Application Serial No. 12/912,410 recites:

"1. A method of conducting a wagering game comprising:

a) a dealer providing at least 1) one deck of physical playing cards and shuffling the physical playing cards to form a random set of physical playing cards;

b) the dealer accepting at least one first wager from each participating player on a player game hand against a banker's/dealer's hand;

c) the dealer dealing only two cards from the random set of physical playing cards to each designated player and two cards to the banker/dealer such that the

designated player and the banker/dealer receive the same number of exactly two random physical playing cards;

d) the dealer examining respective hands to determine in any hand has a Natural 0 count from totaling count from cards, defined as the first two random physical playing cards in a hand being a pair of 5's, 10's, jacks, queens or kings;

e) the dealer resolving any player versus dealer wagers between each individual player hand that has a Natural 0 count and between the dealer hand and all player hands where a Natural 0 is present in the dealer hand, while the dealer exposes only a single card to the players;

f) as between each player and the dealer where neither hand has a Natural 0, the dealer allowing each player to elect to take a maximum of one additional card or standing pat on the initial two card player hand, while still having seen only one dealer card;

g) the dealer/banker remaining pat within a first certain predetermined total counts and being required to take a single hit within a second predetermined total counts, where the first total counts range does not overlap the second total counts range;

h) after all possible additional random physical playing cards have been dealt, the dealer comparing a value of each designated player's hand to a final value of the banker's/dealer's hand wherein said value of the designated player's hand and

the banker's/dealer's hand is in a range of zero to nine points based on a pre-established scoring system wherein aces count as one point, tens and face cards count as zero points and all other cards count as their face value and wherein a two-digit hand total is deemed to have a value corresponding to the one's digit of the two-digit total;

i) the dealer resolving the wagers based on whether the designated player's hand or the banker's/dealer's hand is nearest to a value of 0. "

It is to be particularly noted that the majority of all process steps are physical steps and the substance of the process steps requires the specific movement and transformation of at least one physical article, a standard deck transformed to a set(s) of standard playing cards.  It is asserted by Appellants that there is no abstract idea within the scope of definition that was intended to be patent-ineligible subject matter under Supreme Court law addressing 35 U.S.C. 101.

## STATEMENT OF THE CASE

U.S. Patent Application Serial No. 12/912,410 titled "BLACKJACK VARIATION" was filed as a Non-Provisional Application on 26 October 2010. A Final Office Action was issued against all claims directed towards a method of performing a wagering event with physical game objects. The sole ground of rejection was under 35 U.S.C. 101 as patent ineligible subject matter. Two claims directed toward an equivalent process on an electronic gaming machine were allowed. Appellants filed a Notice of Appeal and Brief on Appeal to the USPTO Board of Patent Trials and Appeals on 26 January 2012.

A Decision by the USPTO Board of Patent Trails and Appeals was issued on 05 December 2014 affirming the rejection under 35 USC 101, citing *Alice Corporation Pty. Ltd. v. CLS Bank International, et al*., 134 S. Ct. 2347 (2014). A Request for Rehearing filed on 05 January 2015 was denied on 28 January 2015. This Appeal to the Court of Appeals for the Federal Circuit was filed on 1 April 2015.

The ultimate sole issue in this Appeal is the patentability of the claims U.S. Patent Application Serial No. 12/912,410 under 35 U.S.C. 101 in accordance with *Alice Corporation Pty. Ltd. v. CLS Bank International, et al*., 134 S. Ct. 2347 (2014).

7

# SUMMARY OF THE ARGUMENT

I)       In *Alice Corporation Pty. Ltd. v. CLS Bank International, et al.*, 134 S. Ct. 2347 (2014), did the Supreme Court fail to provide adequate guidelines for the determination of patent-eligible subject matter for method claims with respect to transformative steps on articles using apparatus constituting more than a generic computer?

II)      Did the Patent Office Examining Corps improperly apply and even extend the inadequate guidelines suggested in *Alice Corporation Pty. Ltd. v. CLS Bank International, et al*., 134 S. Ct. 2347 (2014) to encompass subject matter that should be considered patent-eligible under 35USC101?

III)     Did the USPTO Board of Patent Trials and Appeals improperly apply extreme and faulty analogies to apply *Alice Corporation Pty. Ltd. v. CLS Bank International, et al*., 134 S. Ct. 2347 (2014) to patent-eligible subject matter without identifying patent-ineligible subject matter?

IV)     Did the Deputy Commissioner For Patent Examination Policy issue faulty guidelines as "New Interim Patent Subject Matter Eligibility Examination Instructions" that had no legal authority under either *Alice, supra* or *Bilski v. Kappos*, 130 S.Ct. 3218; 561 U.S. 593, 2010, and was the application of these guidelines during Patent examination legal error?

V)    Did the decision by the USPTO Board of Patent Trials and Appeals fail to identify limitations in the claimed subject matter on appeal that was directed towards an abstract idea and therefore patent-ineligible?

VI)    Was the subject matter improperly examined and reviewed according to I), II), III) and IV), above and, by such improper examination and review, was legal error committed by assuming that the claimed subject matter was reviewable under authority of *Alice, supra* and erroneously found to be directed towards an abstract idea?

## STANDARD OF REVIEW

The correct Standard of Review for issues of law is *de novo*. *In re Zurko*, 142 F.3d 1447, 1457 (Fed. Cir. 1998). The correct Standard of Review for findings of fact is "substantial evidence" review. *In re Gartside*, 203 F.3d 1305, 1053 (Fed. Cir. 2000).

## ARGUMENTS

## Factual Background for the Present State of Law for Patent-Eligible Subject Matter under 35 U.S.C. 101

In a series of four decisions, *Bilski v. Kappos*, 130 S. Ct. 3218; 561 U.S. 593, 2010; *Mayo Collaborative Services v. Prometheus Laboratories, Inc.* 132 S. Ct. 1289, 566 U.S. 593, 2012; *Association for Molecular Pathology v. Myriad Genetics,*569 U.S.____(2013) (referred to as "*Myriad*") and *Alice Corporation Pty. Ltd. v. CLS Bank International, et al*., 134 S. Ct. 2347 (2014), the U.S. Supreme Court has found patents invalid as attempting to claim subject matter that is unpatentable or patent-ineligible under 35 U.S.C. 101.  The four decisions were generally directed to subject matter that was respectively directed to: 1) processes claiming an abstract idea (*Bilski, supra*); laws of nature or natural phenomena (*Mayo, supra*); natural materials (*Myriad, supra*); and apparatus implementing an abstract idea (*Alice, supra*), especially computer-based methods.

These decisions have promoted uncertainty, increased the likelihood of at least appellate litigation, and diminished the integrity of the U.S. Patent system by failing to provide adequate directions and failing to identify meaningful standards for determining patentability of subject matter. Rather than clarifying the scope of patent-eligible subject matter, ambiguity has been created in the U.S. Patent Office decision-making process for examining patent-eligible subject matter.  This ambiguity has damaged business communities that have traditionally relied on

10

intellectual property protection. The gaming industry is identified in this Brief on Appeal as a particular example of an impacted field of technology, as represented by the rejection of the claims in this Appeal.

In addition to the legal environment created by these four Supreme Court decisions, the Patent and Trademark Office has both issued guidelines (e.g., MEMORANDUM DATE:  June 25, 2014) **A287-302** exceeding the scope of the four Supreme Court decisions on patent-eligible subject matter (this term of "the four Supreme Court decision" will be collectively used to refer to *Bilski v. Kappos, supra; Mayo, supra; Myriad, supra* and *Alice, supra'*) and the Examining Corps and Board of Patent trials and Appeals have extended these guidelines issued by the Commissioner of Patent Examination Policy in ways contrary to both the Supreme Court decisions, particularly with respect to *Alice, supra* and the published guidelines. The activities by the Patent Office in both Office Actions and decisions by the US Patent Office Board of Trials and Patent Appeals in pending applications, including the present application on Appeal, clearly exceed the reasoning and authority behind the four Supreme Court decisions on patent-eligible subject matter and a reasonable application of the guidelines.

As evidenced by rejections from the Examining Corps and decisions by the US Patent Office Trial and Appeals Board in the Decision by the Board on the Appealed Application, as many as five distinct errors in law and factual analysis

11

were needed to affirm a single rejection under 35 U.S.C.§101 that the appealed claims in the gaming technology field constituted patent-ineligible subject matter. The five errors included:

1) a lack of operative definition in the Supreme Court cases of the species of patent-ineligible subject matter, in this case, an "abstract idea;"

2) the use of an unsubstantiated analogy to equate subject matter to examples of patent-ineligible abstract ideas;

3) the use of unwarranted terms in Patent Office Guidelines that find no antecedent basis in case law;

4) the extrapolation of the unwarranted terms by the Patent Office Board of Trials and Patent Appeals; and

5) the failure to specifically identify that subject matter asserted to be an "abstract idea" as required by U.S. Patent Office Memoranda.

These decisions by the U.S. Supreme Court and the actions in the U.S. Patent and Trademark Office support the contention that 35 U.S.C. §101 has been erroneously applied with egregious errors and distinct aggressiveness in the field of gaming technology in the claims of U.S. Patent Application Serial No. 12/912.410.

## **Legal Background**

The U.S. Patent system has been the target of significant disrepute based upon the adverse public and business opinions regarding "patent trolls" and the

prevalence of "business method patents" in the field of computer processes and

internet activity, as described in *Alice, supra*:

> "*Growth of Business Method Patents.* The exponential growth in Internet usage has been accompanied by an equally enormous growth in business method patents following the Federal Circuit's approval of such patents in *State Street Bank & Trust Co. v. Signature Fin, Group, Inc.* 149 F.3d 1368 (Fed, Cir. 1998) *cert. denied*, 525 U.S. 1093 (1999).   Over 40,000 business method patent applications have been filed since State Street opened the floodgates, and over 15,000 such patents have been issued. *See Bilski 545 F.3d at 992 (Newman, J., dissenting); see also eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 397 (2006) (Kennedy, J., concurring)* noting the "burgeoning number of patents over business methods.").   It is currently estimated that approximately 11,000 patents cover various aspects of the Internet, many, if not most, of which, are business method patents, *i.e.,* patents that claim businesses not of specific technologies, but of vaguely worded "methods" for doing something. *See* James Bessen & Michael J. Meurer, Patent Failure 8-9 (2008). If the aperture is opened wider to include software patents, it is estimated that there currently are over 200,000 such patents. *Id.* at 22. In other words, literally thousands of people can claim partial invention of the Internet, and thus, potentially can file suit to claim a share of the $178 billion in annual Internet sales.

> "Moreover, the number of cases filed is not a reliable indicator of the number of defendants accused of infringement since, increasingly, "Non-practicing entities" file omnibus infringement actions naming dozens of companies in a single complaint. *See e.g., (Doc. No. 1), Paul N. Ware, et al. v. Abercrombie & Fitch Stores, Inc., et al.* Civil Action No. 4:07-cv-122 (N.D. Ga. June 19, 2007) (alleging infringement of U.S. Patent No. 4,707,592 ("Personal Universal Identity Card System for Failsafe Interactive Financial Transactions") by 109 separate defendants.).   Additionally, "[s]oftware patents are more than twice as likely to be litigated as other patents; patents on methods of doing business, which are largely software patents, are nearly seven times more likely to be litigated." Bessen & Meurer, Patent Failure *at* 22 (brackets added and emphasis in original). In other words, the chance of being sued for patent infringement has skyrocketed since the Federal Circuit approved business method patents in *State Street*."

As stated in *Alice, supra, p*atent "trolls" have become targets of particular obloquy:

> "Defending a patent suit can easily cost millions of dollars, with no guarantee of success. The patent troll offers a license for under $100,000. The end user makes a business decision – millions of dollars to defend a suit that might be lost, or $100,000 or less for certainty? The end user takes a license." *Darren Cahr & Ira Kalina, Of PACs and Trolls: How the Patent Wars May Be Coming to a Hospital Near You,* 19 Health Lawyer 15, 16 (Oct. 2006)."

It was within this perceived intellectual property environment that the four Supreme Court decisions (*Bilski, supra Mayo, supra; Myriad, supra* and *Alice, supra*) were rendered.  In spite of the meritorious objective of reducing the adverse economic impact of patent trolls and the chilling business effects of arguably unpatentable business method patents (especially as being mere abstract ideas), it will be shown that the lack of effective substantive guidance by the Supreme Court and the U.S. Patent and Trademark Office, specifically within the field of gaming technology, has had an unwarranted and equally undesirable impact on the intellectual property of that industry.

## DETAILED ARGUMENTS

**I.**    **In _Alice Corporation Pty. Ltd. v. CLS Bank International, et al._, 134 S. Ct. 2347 (2014), the Supreme Court failed to provide adequate guidelines for the determination of patent-eligible subject matter for method claims with respect to transformative steps on articles using apparatus constituting more than a generic computer.**

### ABSENCE OF ACTUAL GUIDANCE IN DEFINING "ABSTRACT IDEAS" UNDER THE U.S. SUPREME COURT DECISIONS, PARTICULARLY, ALICE

It is worth at least casual note that in the practice of Patent Law, practitioners are held to a well-defined and specific standard of clarity detailed in 35 U.S,C. §112(a) for drafting patent applications that:

> "35 U.S.C. 112, The Specification, (a) IN GENERAL.—The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same,…"

In spite of this legislated background of high standards for linguistic precision in the field of drafting patent applications, both the U.S. Supreme Court and the U.S. Patent and Trademark office have issued decisions and published guidelines on Patent Law that would not satisfy the standards of clarity and specificity required for the patent documents impacted by their decisions and guidelines.    (e.g., Mark A. Litman, _Deficiencies in the Decision and USPTO Application of Mayo Collaborative Services, d.b.a. Mayo Medical Laboratories,_

*LLC v. Prometheus Laboratories, Inc.*, J.P.T.O.S, **95**, No. 1, 2013, pp. 47-59.)
**A318-332 ¶5 p.48**.

There is a first critical step set forth for the application of the *Alice, supra* decision and the Interim Guidelines on *Alice, supra* **A287-302**, flow diagram p. **74621** that is fundamental to the use of those guidelines in applying the decision-making process during patent examination in determining whether claims contain patent-eligible subject matter. That first critical step is the consideration in those Interim Guidelines on patent-eligibility requires that a determination must first be made as: "Part I: Determine whether the claim is directed to an abstract idea." **A290, flow diagram, p. 74622**

The Supreme Court provided only a casual review of past considerations of the concept of an "abstract idea" in *Alice, supra* without providing any specific definition, guidelines or instructions as a basis for determination of the presence or meaning of an abstract idea. The only assistance to the patent practitioner included a modest review of prior decisions, specific examples in those decisions of what had previously been determined to be abstract ideas, and an abbreviated history of the legal issues involved. The Supreme Court's methodology evidences a serious legal deficiency. This flaw is the absence of any detailed definition relating to the issue of patent-eligibility and a lack of appreciation of the scope of ambiguity that

such a deficiency in defining language has on patent-eligible fields of invention.

The Supreme Court stated:

> "The "abstract ideas" category embodies "the longstanding rule that '[a]n idea of itself is not patentable.' " Benson, supra, at 67 (quoting *Rubber-Tip Pencil Co. v. Howard*, 20 Wall. 498, 507 (1874)) see also *Le Roy, supra*, at 175 ("A principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right"). In *Benson*, for example, this Court rejected as ineligible patent claims involving an algorithm for converting binary-coded decimal numerals into pure binary form, holding that the claimed patent was "in practical effect . . . a patent on the algorithm itself." 409 U. S., at 71–72. And in *Parker v. Flook*, 437 U.S. 584–595 (1978), we held that a mathematical formula for computing "alarm limits" in a catalytic conversion process was also a patent-ineligible abstract idea.

> "We most recently addressed the category of abstract ideas in *Bilski v. Kappos*, 561 U.S. 593 (2010). The claims at issue in *Bilski* described a method for hedging against the financial risk of price fluctuations. Claim 1 recited a series of steps for hedging risk, including: (1) initiating a series of financial transactions between providers and consumers of a commodity; (2) identifying market participants that have a counterrisk for the same commodity; and (3) initiating a series of transactions between those market participants and the commodity provider to balance the risk position of the first series of consumer transactions. Id., at 599. Claim 4 "pu[t] the concept articulated in claim 1 into a simple mathematical formula." Ibid. The remaining claims were drawn to examples of hedging in commodities and energy markets.

> "[A]ll members of the Court agree[d]" that the patent at issue in *Bilski* claimed an "abstract idea." Id., at 609; see also id., at 619 (Stevens, J., concurring in judgment). Specifically, the claims described "the basic concept of hedging, or protecting against risk." Id., at 611. The Court explained that " '[h]edging is a fundamental economic practice long prevalent in our system of commerce and taught in any introductory finance class.' " Ibid.

17

"The concept of hedging" as recited by the claims in suit was therefore a patent-ineligible "abstract idea, just like the algorithms at issue in *Benson* and *Flook*."

It is felt that the Supreme Court in *Alice, supra,* (as it did in *Mayo Collaborative Services, d.b.a. Mayo Medical Laboratories, LLC v. Prometheus Laboratories, Inc.* 132 S. Ct. 1289, 566 U.S. 593, 2012) rendered an opinion in which there was an assumption of knowledge and comprehension of critical terms (specifically "abstract idea" in *Alice, supra*) and the scope of claim limitations in the decision as they relate to a concept of abstraction. The Supreme Court then failed to provide specific directions for defining the scope of those critical terms (such as Laws of Nature in *Mayo, supra*) and created an environment for abuse of the decision with respect to technologies claimed in patents that are, in fact, neither obvious nor abstract.

Gaming technology in particular has fared poorly under the Interim Guidelines for *Bilski v. Kappos, supra,* where at one point in the formulation of patent examining guidelines, game content itself was singled out as an example of non-patentable subject matter. **A303-310**

During the pendency of the Appeal to the U.S. Supreme Court, and after intermediate Court decisions on *Bilski v. Kappos, supra* (*In re Bilski*), the U.S. Patent and Trademark Office issued the first "New Interim Patent Subject Matter Eligibility Instructions" and "Interim Examination Instructions for Evaluating

18

Subject Matter Eligibility under 35 U.S.C. §101" in August 2009. **A303-310** The

USPTO then issued the 2nd Interim Guidelines, published as Federal

Register/Volume 75, No. 143/Tuesday July 27, 2010. **A311-317**

The purpose of the guidelines, as stated in the Memoranda themselves, was

to give definitive bases for evaluating individual claim content satisfaction of the

requirements of statutory compliance under 35 U.S.C. 101 with respect *Bilski v.*

*Kappos*.   Not only were general interim guidelines provided in the Federal

Register, but a detailed list of weighting factors for and against eligibility as a

statutory class of invention was also set forth in the Second Interim Guidelines as a

basis for evaluating claims as to patent eligible subject matter.

The Memoranda on "New Interim Subject Matter Eligibility Examination

Instructions" **A303-310** and "Interim Examination Instructions" **A311-317**  (under

*Bilski, supra*) specifically identified seven (7) non-limiting examples of claims that

were presumed to not be directed towards one of the statutory classes of invention

under 35 U.S.C. § 101 (Memorandum) or four specific examples of claims that

were not eligible (2009 Interim Guidance for Determining Subject Matter

Eligibility for Process Claims in View of *Bilski v. Kappos*). **A303-310** Those

examples in the first Interim Guidelines were specifically identified as:

> Memorandum – i) Transitory forms of signal transmission (for
> example, a propagating electrical or electromagnetic signal *per se*);
> ii) A naturally occurring organism; iii)  A human *per se*; iv) A
> legal contractual agreement between two parties; v) A game

19

defined as a set of rules; vi) A computer program *per se*; vii) A company.

Interim Examination Instructions – Transitory signals *per se*, humans *per se*, a company *per se*, **or a set of instructions *per se* (such as a game or software *per se*)**.   **A303-310** (**emphasis** added).

It is to be noted that the second and final Interim Guidelines (2nd Interim Guidelines, published as Federal Register/Volume 75, No. 143/Tuesday July 27, 2010) did not have any reference to game rules. **A311-317** More importantly, none of the four decisions by the Supreme Court on patent eligible subject matter under 35 U.S.C. 101 provided any guidelines or dicta indicating any similar objective consideration of gaming technology as distinctly being unpatentable subject matter. Therefore, as there was no literal basis in the four Supreme Court decisions for specifically addressing gaming technology, that area of technology, including process patents within the gaming industry, must be treated in the same manner as any other process patent considered for patent eligible subject matter by the courts and the U.S. Patent and Trademark Office.

## II. **The Patent Office Examining Corps has improperly applied and even extended the inadequate guidelines suggested in Alice Corporation Pty. Ltd. v. CLS Bank International, et al., 134 S. Ct. 2347 (2014) to encompass subject matter that should be considered patent-eligible under 35 USC §101.**

**IMPROPER INTERPRETATION OF ALICE AND THE GUIDELINES BY THE EXAMINING CORPS IS CLEAR LEGAL AND FACTUAL ERROR**

Not a single one of the four Supreme Court decisions makes any reference to games or gaming. Those terms are a spurious artifact of the first Interim Guidelines (First Interim Guidance Standards (published August 24, 2009), Off. Gaz. Pat. & Trademark Office, FROM: Andrew H. Hirshfeld, Deputy Commissioner for Patent Examination Policy, Effective Today: New Interim Patent Subject Matter Eligibility Examination Instructions"). **A303-310** That term ("game") subsequently was dropped in the final Second Interim Guidelines **A311-317** and changed to: "Basic legal theories (e.g., contracts, dispute resolution, **rules** of law);" (**emphasis** added)

There is not a single occurrence of the word or concept of "games" in the four Supreme Court decisions on patent-eligible subject matter under 35 U.S.C. 101. Therefore, any attempt to specifically extend the application of the four Supreme Court cases to that field of technology is done without legal authority or precedence.

21

As later shown, every occurrence of the terminology of "rules" in the four U.S. Supreme Court decisions is irrelevant to gaming rules. See also Section VI., below, in which the guidelines are Board decision are shown to be incompatible with or contrary to objectives of protecting against monopolization of basic scientific tools.

### III.     The USPTO Board of Patent Trials and Appeals improperly applies extreme and faulty analogies to apply *Alice Corporation Pty. Ltd. v. CLS Bank International, et al.*, 134 S. Ct. 2347 (2014) to patent-eligible subject matter.

**FAILED ANALOGIES IN COMPARING PHYSICAL PROCESS TO "RULES *PER SE*" IN ATTEMPTING TO BRING CLAIMED SUBJECT MATTER INTO THE SPHERE OF U.S. SUPREME COURT DECISIONS**

The physical steps **performed** in the recited method claims are not "rules *per se.*" These recited physical steps, as opposed to the claiming of rules *per se* identified in the *Bilski* guidelines ((Interim Guidance Standards (published July 27, 2010), Off. Gaz. Pat. & Trademark Office), evidence a fact that the claims recite distinct physical steps, and are not the mere rules of a game *per se*, even if rules were prohibited patent0ineligible subject matter. There are actual physical steps that must be physically performed, with specific physical elements in specific physical location, in specified physical sequences to effect a determinable result that includes an absolute transfer of specific funds. Claim 1 of U.S. Patent Application Serial No. 13/912,410 on Appeal recites:

"1. A method of conducting a wagering game comprising:

a) a dealer providing at least 1) one deck of physical playing cards and shuffling the physical playing cards to form a random set of physical playing cards;

b) the dealer accepting at least one first wager from each participating player on a player game hand against a banker's/dealer's hand;

c) the dealer dealing only two cards from the random set of physical playing cards to each designated player and two cards to the banker/dealer such that the designated player and the banker/dealer receive the same number of exactly two random physical playing cards;

d) the dealer examining respective hands to determine in any hand has a Natural 0 count from totaling count from cards, defined as the first two random physical playing cards in a hand being a pair of 5's, 10's, jacks, queens or kings;

e) the dealer resolving any player versus dealer wagers between each individual player hand that has a Natural 0 count and between the dealer hand and all player hands where a Natural 0 is present in the dealer hand, while the dealer exposes only a single card to the players;

f) as between each player and the dealer where neither hand has a Natural 0, the dealer allowing each player to elect to take a maximum of one additional card or standing pat on the initial two card player hand, while still having seen only one dealer card;

g) the dealer/banker remaining pat within a first certain predetermined total counts and being required to take a single hit within a second predetermined total counts, where the first total counts range does not overlap the second total counts range;

h) after all possible additional random physical playing cards have been dealt, the dealer comparing a value of each designated player's hand to a final value of the banker's/dealer's hand wherein said value of the designated player's hand and the banker's/dealer's hand is in a range of zero to nine points based on a pre-established

23

> scoring system wherein aces count as one point, tens and face cards count as zero points and all other cards count as their face value and wherein a two-digit hand total is deemed to have a value corresponding to the one's digit of the two-digit total;
>
> i) the dealer resolving the wagers based on whether the designated player's hand or the banker's/dealer's hand is nearest to a value of 0. "

It is clear that "rules *per se*" are not claimed, as the claim recites multiple physical steps on an article, the set of playing cards. The physical steps claimed are not similar to the presence of a mathematical formula or algorithm (as considered by analogy in the USPTO Board of Patent Trials and Appeals decision), neither or which contain physical implements or physical steps. Similarly, the recitation of physical steps in a well-defined wagering event is not a recitation of game rules, any more than recitation of physical steps in a chemical reaction would be a claim to rules of a chemical reaction event. The Examiner's and Board of Patent Trials and Appeals' use of analogies to attempt to liken the physical steps recited in the claims to algorithms is a dangerous method of extending authority. **A104-105** Analogies may be so fatally flawed as to be the basis for attempts at humor because of the absurdity of comparisons, such as: "Why is a laser beam like a goldfish?...Because neither one can whistle." (Heinlein, Robert A., *The Moon is a Harsh Mistress,* G.P. Putnam's Sons, New York, N.Y. 1966, p.11).

There are numerous publications in the scientific community that warn of the weakness and even danger of analogies in scientific analyses.

Analogy is the extension of patterns of relationship drawn from one area of experience to coordinate other types of experience.... An analogy is never a total identity or a comprehensive description, but <u>only a simplified comparison of limited aspects</u>. (I. G. Barbour, <u>Issues in Science and Religion</u> (New York: Harper, 1966) 158-161.) (<u>emphasis</u> added) *The Investigation of Self-generated Analogies for Pre-service Chemistry Teachers* (Article written in Chinese) Ya-Chun, Chinese Journal of Science Education, Vol. 15 No. 3, Pages 265 - 294 , 2007.

This second fault in the decision is the unwarranted and insupportable analogy equating the physical steps in a process of performing a wagering event to an algorithm.  In the absence of authoritative guidelines and directions for defining abstract ideas, the Examiner and Board of Patent Trails and Appeals insinuated a legal conclusion (the existence of a patent-ineligible abstract idea) by a flawed analogy to achieve a final legal and factual conclusion. A50-51; A104-105.  This unjustified attempt should be seen as clearly falling within the realm of highly imperfect analogies, without having any substantive legal authority.  Particularly, the failure to recognize the criticality of the transformation of the set of playing cards by randomization and divisions into subsets A104-105 in view of the legal A374-A375 and wager enabling criticality of that step A369-373; A333-368 ignores facts and reality of the recited process.

**IV.** **The Deputy Commissioner For Patent Examination Policy issued faulty guidelines as "New Interim Patent Subject Matter Eligibility Examination Instructions" that had no legal authority under either _Alice, supra_ (MEMORANDUM DATE: June 25, 2014) or _Bilski v. Kappos_, 130 S.Ct. 3218; 561 U.S. 593, 2010. The application of these guidelines during Patent examination was legal error.**

**THE GUIDELINES ISSUED BY THE DEPUTY COMMISSIONER FOR PATENT EXAMINATION POLICY EXTENDED THE LEGAL SCOPE OF SUPREME COURT CASES WITHOUT MERIT**

There is no statement in any of the four Supreme Court cases with respect to patent-ineligible subject matter on the basis of the presence of limitations of "rules" within claimed subject matter. In the four decisions, the term "rules" appears a) in _Alice, supra_ only because of descriptions of a "longstanding rule" used in interpreting case law, and b) in again _Bilski_ because of terminology used with respect to rules of legal interpretation, and c) in _Mayo_ and _Myriad_ for language generally discussing application of legal rules. The Second Interim Guidelines and decision by the US Patent and Trademark Office **A311-317** are therefore based on an unwarranted artifact relating to "games" in the first Interim Guidelines, which was removed in the final Guidelines, and in an interpretation being placed on additionally unauthorized terms ("rules") that are not literally supported by the four Supreme Court cases.

26

It is therefore clear that the decision by the Patent and Trademark Office Board of Patent Trails and Appeals decision in U.S. Serial No. 12/912,410, in accepting the arguments of the Examiner that:

> "**Like the presence of a formula or an algorithm**, **Appellants' recited rules do not render the claimed idea any less abstract**. See Alice, 134 S.Ct. at 2356-59 (discussing cases involving formulas and algorithms). **Physical cards may be used to help the players and the dealer effectuate the rules, but any randomly-distributed tokens or other similar items could do the same**. Therefore, when read as a whole, we agree with the Examiner that **independent claim 1 is directed to a set of rules for conducting a wagering game which**, for the reasons discussed above, constitutes a patent-ineligible abstract idea." (**emphasis** added)

was in error and without legal authority from the four Supreme Court cases on patent-eligible subject matter given between 2010 and 2014 (*Bilski, Mayo, Myriad* and *Alice, supra*). Such a rejection of claimed subject matter was accomplished only from the three PTO guidelines that themselves misconstrue, misinterpret and misapply both the underlying philosophy of the four Supreme Court cases and the literal scope of authority provided by the cases.

In numerous applications (including the present application) with claims to virtual gaming content, intimate association with a processor, display system and player input system, the USPTO allowed such claims, differentiating them from game content embodied with physical playing cards. **A200** The clear attack in the Board of Appeals decision that claimed technology where "…(ii)…the representative method claim does no more than simply instruct the

27

practitioner to implement the abstract idea of intermediated settlement **on a generic computer**…" (**emphasis** added) might be taken as clear basis for an attack on electronically implemented gaming content upon assertion that game content is *per se* an abstract idea.  However, where clear physical steps and physical transformation of an article (in the present claims by randomization and division of a physical set of playing cards into subsets) are recited in the claims, the scope of applicability of *Alice, supra* diminishes or disappears as the basis for characterizing the physical wagering process as an abstract idea.  The process as claimed on Appeal cannot reasonably be equated to claiming a known generic financial procedure and implementing that procedure on a generic computer as prohibited by *Alice, supra*.  The claimed physical method of the application on this Appeal is neither abstract, nor generic nor is it practiced on a generic computer.  The rejection of the present claim as "rules" under some non-authorized extension of *Alice, supra*, is legal error.

**V.    The decision by the USPTO Board of Patent Trials and Appeals failed to identify limitations in the claimed subject matter on appeal that was directed towards an abstract idea and therefore patent-eligible.  The subject matter was improperly reviewed according to I), II), III) and IV), above and by assuming that the claimed subject matter was reviewable under authority of *Alice, supra* as directed towards an abstract idea.**

**THE DECISION EVEN FAILED TO COMPLY WITH THE PTO GUIDELINES ON APPLICATION OF *ALICE,* EVEN AS THOSE GUIDELINES WERE IN ERROR AND EXTENDED THE LEGAL SCOPE OF SUPREME COURT CASES WITHOUT JUSTIFICATION**

The following analysis of gaming technology process claims will be considered in the legal perspective of the four decisions of the Supreme Court, official Memoranda and three Guidelines of the U.S. Patent and Trademark Office and common sensibility.  Even all of these efforts shed little illumination to assist in an understanding of undefined terms and ill-considered analogies, above identified herein in specific Patent Office Actions and Board of Patent Trials and Appeal Board.

The following analysis will be directed at the gaming technology that was the subject of the decision on appeal by the US Patent Office Board of Patent Trials and Appeals in U.S. Serial No. 12/912,410 in which there is physical implementation of random event outcomes (e.g., playing cards, dice, roulette wheel and drop ball), with special emphasis on playing cards.

29

## FACTUAL BACKGROUND FOR ANALYSIS

In most casino table playing card wagering events (e.g., blackjack, baccarat, and poker variations) a first set of playing cards is provided, and individual subsets of random playing cards are distributed to player positions and possibly a dealer position or community card position. The subsets of cards are random cards, provided as individual random cards or as sets of random cards, from a randomized complete set of one or more playing cards. **A369-373; A333-369**

These steps of randomizing an original set of playing cards, distributing specifically-sized subsets of the playing cards to different locations at different times clearly are physical events that occur during casino playing card wagering events.  Looking first at these acts as a physical transformation (even as this basis of analysis has been limited as a controlling test by *Bilski, supra*), the US Patent Office refused to consider this physical action as a transformation of the original set (one or more decks) of playing cards, by asserting that the individual cards are not "transformed" or that the activity (even in combination with physically distributed wagers) constitutes "rules of human behavior." **A50-51; A104-105** That is clear error in fact and law.

The Board decision also held that the physical events recited in the claims "is a set of rules for a wagering game…which constitutes a patent-ineligible abstract idea."  This categorization of actual physical events and physical

30

distribution of articles and subsets does not correspond with the decision guidelines in the actual Supreme Court language of *Alice, supra* (MEMORANDUM DATE: June 25, 2014) **A287-302**. The guidelines are not specific to the physical wagering event with playing cards, and categorization does not comply with the specificity in the original PTO Interim Guidelines for application of *Bilski* to process claims, which guidelines are nor supported by any authority in *Bilski* or *Alice* to prohibit implementation of steps as part of a game:

> "v) A game **defined as a set of rules**; vi) A computer program *per se*; vii) A company.

> "Interim Examination Instructions – Transitory signals *per se*, humans *per se*, a company *per se*, or **a set of instructions *per se*** (such as a game or software *per se*)." (**emphasis** added)

> There were also "Interim Examination Instructions – Transitory signals *per se*, humans *per se*, a company *per se*, or **a set of instructions *per se*** (such as a game or software *per se*)."[60]

> (**emphasis** added)

Note that the final specific *Bilski* Second Interim Guidelines **A311-318** required and clarified patent-ineligible subject matter as "v) A **game defined by a set of rules**;…or a set of instructions *per se* (such as a game…)." (**emphasis** added)  It will be further evidenced herein that even those guidelines were without authority from any of the four Supreme Court decisions.

Instead of literally evaluating the subject matter and limitations of the claims within the basis of the decision in *Alice, supra* and using the second PTO Interim

Guidelines, the decision of the Patent and Trademark Office Board of Patent Trials

and Appeals decision in US Serial No. 12/912,410 accepted the arguments of the

Examiner that:

> "**Like the presence of a formula or an algorithm,** [1]
> **Appellants' recited rules do not render the claimed idea**
> **any less abstract**. [2] See Alice, 134 S. Ct. at 2356-59
> (discussing cases involving formulas and algorithms). **Physical**
> **cards may be used to help the players and the dealer**
> **effectuate the rules,** [3] **but any randomly-distributed**
> **tokens or other similar items could do the same**. [4]
> Therefore, when read as a whole, we agree with the Examiner
> that **independent claim 1 is directed to a set of rules for**
> **conducting a wagering game which**, [5] for the reasons
> discussed above, constitutes a patent-ineligible abstract idea."
> (**emphasis** added) **A53-56**

There are at least five separate areas of error in this single paragraph, each

one indicated and emphasized above and identified [#].

**VI.** **Did the decision by the USPTO Board of Patent Trials and Appeals**
**fail to consider the physical nature of steps performed in the process**
**in assuming the claimed method to be an abstract idea, AND**
**THEREFORE was the subject matter improperly examined**
**according to I), II), III) and IV), above and by such improper review**
**was legal error committed by assuming that the claimed subject**
**matter was reviewable under authority of *Alice, supra* as directed**
**towards an abstract idea?**

**FAILURE TO IDENTIFY SUBJECT MATTER CLAIMED AS AN**
**ABSTRACT IDEA AND THEREFORE WITHIN THE PROVINCE**
**OF SUBJECT MATTER REVIEWABLE UNDER *ALICE* AS**
**PATENT-INELIGIBLE**

First, in *Alice* the Supreme Court believed it was clarifying patent-

ineligibility of algorithms by referencing that:

"In Benson, for example, we considered a patent that claimed an algorithm implemented on "a general-purpose digital computer." 409 U. S., at 64."

Recitation of an algorithm in a claim, when there are additional steps that are novel and unobvious can render the claims patent eligible. (*Alice*, p. 15 of slip opinion).  The claims reviewed in the Patent Office Board of Trials and Patent Appeals, Decision on Appeal did not have any "recited rules," (*per se*) or factors that encompass "other similar items," nor were the limitations of the claims identified specifically as "directed to a set of rules [*per se*]." The first statement in the quoted paragraph above was made by the Board of Appeals in an improper assumption that an abstract idea was claimed solely by a false analogy that "recited rules" (which do not exist in the claims) are equivalent to an algorithm. **A53-56**  It was clear factual error to hold that physical process steps of transforming the physical state of a randomized set of playing cards is equivalent to an algorithm.  It was legal error to assume that the physical steps recited in the claims are rules.

Physical playing cards and their physical movement and change of state are recited in all the claims of the Application in the Appeal, and no other physical elements are encompassed by the claim. **A53-56**   Whether or not other randomly distributed elements could be used (as asserted by the Board of Appeals decision) is more evidential to a finding of fact under obviousness according to Title 35 U.S.C.§103(a) than whether or not the claims violate the underlying concern in patenting "abstract ideas" according to *Alice, supra,* that:

"At Mayo step two, we must examine the elements of the claim to determine whether it contains an "'inventive concept'" sufficient to "transform" the claimed abstract idea into a patent-eligible application. 566 U. S., at ___, ___ (slip op., at 3, 11). A claim that recites an abstract idea must include "additional features" to ensure "that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." Id., at ___ (slip op., at 8–9). Mayo made clear that transformation into a patent-eligible application requires "more than simply stat[ing] the [abstract idea] while adding the words 'apply it.'" Id., at ___ (slip op., at 3).

"(a) The Court has long held that §101, which defines the subject matter eligible for patent protection, contains an implicit exception for ' "[l]aws of nature, natural phenomena, and abstract ideas.' " Association for Molecular Pathology v. Myriad Genetics, Inc., 569 U. S. ___, ___. In applying the §101 exception, this Court must distinguish patents that claim the " 'buildin[g] block[s]' " of human ingenuity, which are ineligible for patent protection, from those that integrate the building blocks into something more, see Mayo Collaborative Services v. Prometheus Laboratories, Inc., 566 U. S. ___, ___, thereby "transform[ing]" them into a patent-eligible invention, id., at ___. Pp. 5–6.

"Accordingly, in applying the §101 exception, we must distinguish between patents that claim the "'buildin[g] block[s]'" of human ingenuity and those that integrate the building blocks into something more, *Mayo*, 566 U. S., at ___ (slip op., at 20), thereby "transform[ing]" them into a patent-eligible invention, *id.,* at ___ (slip op., at 3).

The object stated in each of the four Supreme Court cases (*Bilski, supra; Myriad, supra; Mayo, supra;* and *Alice, supra*) is to prevent a patent from foreclosing general use basic scientific tools (Laws of Nature, natural materials and natural phenomenon). That does not occur in the claims of this Appeal.

34

There was clear error in the decision by the Board of Patent Appeals and Trials in approaching the review of patent eligibility of the subject matter of a specific wagering event, using physical playing cards, and randomly distributed to specific physical locations as an attempt to foreclose research into basic and fundamental tools of science or nature. There is error as there is no reasoned or reasonable way of equating the recited physical steps of transforming a set of playing cards by their physical randomization in a wagering event to the underlying philosophy of the four Supreme Court decisions – foreclosing the use of basic scientific tools. Any such assertion has not been supported by any reasoned basis in the Board of Patent Trials and Appeal Board decision on US Serial No. 12/912,410 unless an unwarranted assumption or absurd analogy is elevated to fact within the decision.

No specific limitations in the subject matter content was specifically identified as an "abstract idea" except by tortured analysis or unwarranted legal conclusion, which has been discussed above and addressed immediately below. The technology of the claims, a process for implementing a wagering event implemented by the physical randomizing of and creation of distinct subsets of physical playing cards cannot be considered as that type of generic claim pre-empting the general use of scientific tools and building blocks of technology. The rejection and decision therefore failed to meet the first step in the guidelines

discussed above, identifying the abstract idea, and failed to be directed towards the intent of the decisions in blocking work in generic fields.    Technology in the claims on Appeal is not of such as scope as to encompass generic scientific principles.    On that basis legal error has been done is so characterizing the claims under *Alice*.

This aspect of the erroneous reasoning advanced in the Decision on Appeal by the Patent Office Board of Patent Trials and Appeals is found in the facts that the Second Interim Guidelines **A311-317** state that:

> "As emphasized in Alice Corp., **abstract ideas are excluded from eligibility based on a concern that monopolization of the basic tools of scientific and technological work might impede innovation more than it would promote it**. At the same time, the courts have tread carefully in construing this exclusion because, at some level, all inventions embody, use, reflect, rest upon or apply abstract ideas and the other exceptions. Thus, an invention is not rendered ineligible simply because it involves an abstract concept. In fact, inventions that integrate the building blocks of human ingenuity into something more by applying the abstract idea in a meaningful way are eligible." (**emphasis** added)

Examples of abstract ideas, without any formulated basis of identification or definition of "abstract ideas" referenced in *Alice* included:

• Fundamental economic practices 1;

• Certain methods of organizing human activities 2;

• "[A]n idea of itself 3; and

• Mathematical relationships/formulas 4"

First it is to noted that the scope of technology in the claims on Appeal is in no way consistent with the objective goals quoted above for "…**a concern that monopolization of the basic tools of scientific and technological work might impede innovation more than it would promote it** …"  It is beyond reason to assert that claiming a wagering process with specified movement and distribution of physical playing cards to implement a wagering event should be a concern to "monopolization of the basic tools of scientific and technological work."  To that end, the objectives, principles and parameters of *Alice, supra,* cannot be applied to the present claimed subject matter.  The application of *Alice, supra* as defining patent-ineligible subject matter under 35 USC 101 against the narrow scope of subject matter of the present claims is incompatible with the principles and law defined by *Alice, supra* and 35 USC 101, and constitutes error in law and fact.

It is to be noted that **NO** claim content in the claims in the decision on Appeal encompassing wagering events with playing cards referenced in the memorandum, and no type of claim content identified (even marginally) in *Alice*, has been identified in any claim subject matter as content that should be considered as an Abstract idea under the four categories of the guidelines of the Memorandum **A287-302** (*supra*) or the Supreme Court decision in *Alice*. There is no evidence beyond assumptions and reliance on flawed analogies that is asserted to provide any reasoned basis as to why the claim as a whole or any part thereof is directed

37

towards an abstract idea.  None of the two interim *Bilski* guidelines **A302-310; A311-317** has been followed, and even where Appellant had made a detailed, seven page, detailed comparison in the Appeal Brief of US Serial No. 12/912,410 **A128-134** of every single relevant evidentiary weighting guideline set forth by the Patent Office, the Board decision failed to take any recognition of the comparison and instead assumed a flawed basis of analysis to make a final legal conclusion that the claims were patent-ineligible as directed to an ill-defined abstract idea.

Without having any newer operative definition of an "abstract idea" from *Alice, supra*, ignoring a detailed and strict comparison to the weighted factors guidelines provided by the U.S. Patent and Trademark Office in the Federal Register / Vol. 75, No. 143 / Tuesday, July 27, 2010 / Notices, pp 43922-43928, **A311-317** the decision and the USPTO fail to respect Appellants' extensive evidence to show compliance with the USPTO guidelines and is an error in law and fact.

### The Guidelines Are Arbitrary and Do Not Have Effect of Law or Rules. The 35 U.S.C. § 101 Guidelines Exceed Patent Office Authority as Being Substantive Extensions of Law

35 U.S.C. § 2(b)(2) limits the PTO's rulemaking authority to establishing rules "not inconsistent with law."' 35 U.S.C. § 2(b)(2) (2000). Although commentators and courts have stated that a rule adopted by the PTO will have the effect of law unless inconsistent with statute (2 William C. Robinson, The Law of

Patents 8-9 (Clark Boardman Co. 1971) (1890)), 199 the PTO's rulemaking authority is actually much more limited. The U.S. Court of Customs and Patent Appeals (CCPA) confirmed that PTO rules must not only be consistent with statute, but must also be consistent with established precedent. (*In re Van Ornum*, 686 F.2d 937, 945-46 (C.C.P.A. 1982).)   As noted by Director Herbert C. Wamsley:

> "The fact that PTO rules must be consistent with judge-made law as well as statutory law limits considerably the Commissioner's power to promulgate substantive rules, because a massive amount of judge-made law exists in the patent and trademark field. (Herbert C. Wamsley, The Rulemaking Power of the Commissioner of Patents and Trademarks (pt. 2), 64 J. Pat. Off. Soc'y 539, 557 (1982).)

The PTO's congressional grant to establish rules in 35 U.S.C. § 2(b)(2) is therefore much more narrow than it appears at first glance. In addition, guidelines are even less capable of extending statutes and case law, having no ability to create or extend law.  Since any new rules adopted by the PTO must comply with both statute and precedent, the PTO must analyze both the language of the patent statute as well as judicial interpretations of the statute before adopting new rules; a proposed PTO rule that appears permissible solely on the face of the statute may infringe judicial holdings.

In *Animal Legal Def. Fund v, Quigg*, 932 F.2d 920 (Fed. Cir. 1991), the Federal Circuit weighed in on the extent of the PTO's rulemaking authority. The Federal Circuit implied that the PTO does not have substantive rulemaking power,

noting that a "substantive declaration . . . does not fall within the usual interpretation of [conduct of proceedings] statutory language. This stance was contrary to the view of some commentators, who felt that Congress intended to give the PTO broad power and autonomy to administer the patent statute.( Wamsley, *supra*, at 556) The Federal Circuit disagreed, analogizing the PTO's rulemaking authority to the Equal Employment Opportunity Commission's (EEOC's) rulemaking authority found in 42 U.S.C. § 2000e- 12(a). *Gen. Elec. Co. v. Gilbert*, 429 U.S. 125, 141 & n.20 (1976). This section granted the EEOC the authority to "issue... suitable procedural regulations" to carry out the provisions of the equal employment opportunities statute. (42 U.S.C. §2000e-12(a).)  After *Gen. Elec., supra*, there was still doubt as to the PTO's authority to adopt substantive rules. The Federal Circuit put this doubt to rest in 1996 with an emphatic declaration that the PTO has no substantive rulemaking authority. (*Merck & Co. v. Kessler*, 80 F.3d 1543, 1549-50 (Fed. Cir. 1996)). The court reiterated that "the broadest of the PTO's rulemaking powers... does NOT grant the Commissioner the authority to issue substantive rules." The Court went on to say that "Congress has not vested the Commissioner with any general substantive rulemaking power." This declaration by the Federal Circuit seemed to put an end to the confusion regarding the PTO's authority to promulgate substantive rules.

The U.S. Supreme Court has stated that "the courts are the final authorities on issues of statutory construction. They must reject administrative constructions of the statute, whether reached by adjudication or by rulemaking, that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement." (*FEC v. Democratic Senatorial Campaign Comm*., 454 U.S. 27, 32 (1981); see also *Astra v. Lehman*, 71 F.3d 1578, 1580 (Fed. Cir. 1995)) To this end, the APA provides extensive judicial review of "agency action, findings, and conclusions." 5 U.S.C. § 706(2) (2000) 237 Section 706 of the APA provides that a "reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be--(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ... [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.' Thus, section 706 gives reviewing courts several avenues to set aside PTO rules. For example, this section requires reviewing courts to set aside a PTO rule if the rule is in excess of statutory authority, or namely, in excess of 35 U.S.C. § 2(b)(2). This section also requires reviewing courts to set aside arbitrary or capricious PTO rules.

It is the contention in this Appeal that the Guidelines on *Alice, supra*, constituted at least one of arbitrary assertions, capricious direction, an abuse of discretion or in excess of statutory jurisdictional authority, limitations or short of statutory right.  This is because the Guidelines on *Alice, supra,* attempt to create a

new scope of statutory patent-ineligible subject matter under 35 U.S.C. 101 as noted above in Sections I-V of this Brief on Appeal.

## REQUEST FOR DECISION ON ISSUES

In rendering a reversal of the rejection on Appeal, it is requested that the Court make findings as follows:

1) That the objectives of the four Supreme Court cases to define patent-eligible subject matter to prevent "…**abstract ideas are excluded from eligibility based on a concern that monopolization of the basic tools of scientific and technological work might impede innovation more than it would promote it**…" have been erroneously applied to a physical wagering event using physical random number generating devices (e.g., playing cards, dice and roulette wheels) in which the physical steps require significant and critical transformations to enable determining a wagering event random outcome are recited.

2) Neither the objectives of the four Supreme Court cases preventing monopolies on basic scientific tools by attempting to define patent-ineligible subject matter nor any authority in *Alice, supra*, allows imposition of that case to a physical wagering process requiring transformation of an article (a set of playing cards), by random physical

distribution of subsets (e.g., hands of playing cards) of playing cards to defined positions about a gaming table.

3) That the physical steps performed in finding 2) are not analogous to a generic computer executing software for a generic and fundamental economic concept as described in *Alice, supra* and the authority of that case should not be applied to non-analogous physical processes.

4) That a process in which a physical article (e.g., a set of physical playing cards) is transformed into defined subsets of random components (cards) of the physical article is not an abstract idea within any scope of definition or analogy within the four Supreme Court cases, and specifically not within *Alice, supra*.

5) That the three Guidelines issued by the USPTO Assistant Director improperly extended the case Law of the four Supreme Court cases and the Patent Office has improperly applied the guidelines for *Alice* and the case law from *Alice* to apply the authority of *Alice* to a physical transformation process.

## CONCLUSION

"There arises from a bad and inapt formation of words, a wonderful obstruction to the mind." — Francis Bacon.   The three sets of guidelines published by the Deputy Commissioner For Patent Examination Policy purporting to give directions to Examiners on Examination of claims under 35 U.S.C.§101 in view of the four Supreme Court decisions on the issue improperly extend the bounds of those four decisions without any substantive legal precedence or authority.   The four Supreme Court decisions are flawed enough in their failed attempts to define fields of patent-ineligible subject matter. Examination practice and Board of Appeals decisions have further strayed from the four defective Supreme Court decisions and three Guidelines published by the Patent Office. The vagueness and indefiniteness of the language in the U.S. Supreme Court's decisions gave fertile ground to the unfettered growth of impermissible policy, deficient decisions and poor practices that extend beyond reasonable authority created by the decisions or within 35 U.S.C. §101.   The improper application of misinterpreted case law and unwarranted extension of legal authority by Examiners, the Patent Office Board of Patent Trials and Appeals and the Commissioner's Office has been particularly harsh in the field of wagering methods including casino table wagering events and electronic gaming machines.   In a single decision in the field of gaming technology by the US Board of Patent Appeals and Trials, at least five distinct errors were

made in determination of the sole issue of patent-ineligibility. Those at least five distinct legal errors included: : 1) a lack of operative definition in the Supreme Court cases of the species of patent-ineligible subject matter, in this case, an "abstract idea;" 2) the use of an unsubstantiated analogy to equate subject matter to non-authoritative examples of patent-ineligible abstract ideas; 3) the creation of unwarranted terms in Patent Office Guidelines that find no antecedent basis in case law or statutes and expand the law without authority; 4) the extrapolation and capricious extension of the unwarranted terms by the Patent Office Board of Trials and Patent Appeals; and 5) the failure to specifically identify that subject matter asserted to be an "abstract idea" as required by U.S. Patent Office Memoranda and as the object of protection under *Alice, supra*, ignoring guidelines issued by the PTO to determine if claimed subject matter is abstract or not.

The evidence of record establishes that the method claims on Appeal are recited in terms of clear movements of physical objects (playing cards) and transforming an article (set of playing cards), and the claims are not attempts to claim Abstract ideas and bar advancement in basic fields of science. Based on any one of these issues, the Decision by the Board of Patent Trials and Appeals holding the claims of US Serial No. 12/912,410 invalid as patent-ineligible subject matter under 35 USC 101 as directed towards an abstract idea should be reversed. Based

on the collective issues and arguments presented herein, the decision must be reversed.

Respectfully submitted,

/s/ Mark A. Litman
Mark A. Litman
Mark A. Litman & Associates, P.A.
7001 Cahill Road, Suite 15A
Edina, MN 55439
Telephone (Cell) 612-965-3755
Facsimile: 952-832-9191
malpatlaw@aol.com
*Attorneys for Appellants*

# ADDENDUM

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE PATENT TRIAL AND APPEAL BOARD

*Ex parte* RAY SMITH and AMANDA TEARS SMITH

Appeal 2012-009025
Application 12/912,410
Technology Center 3700

Before: CHARLES N. GREENHUT, JILL D. HILL, and
BRANDON J. WARNER, *Administrative Patent Judges*.

GREENHUT, *Administrative Patent Judge*.

DECISION ON REQUEST FOR REHEARING

STATEMENT OF CASE

This is a response to a Request for Rehearing ("Request") of the
Board's Decision of December 5, 2014 ("Decision"). Requests for
Rehearing are limited to matters overlooked or misapprehended by the Panel
in rendering the original decision. *See* 37 C.F.R. § 41.52.

OPINION

Initially, we note that our rules do not provide for Appellants to
request an additional oral hearing or an *en banc* rehearing. *See* Request 2.

Appeal 2012-009025
Application 12/912,410

Appellants first contend that the claimed subject matter, which the Examiner determined to be directed to rules of a game (Decision 4), is not directed to an abstract idea. Request 6–7. However, Appellants' arguments in this regard are nothing more than conclusory statements. Appellants do not dispute that game rules are the subject of the claims before us. Nor do Appellants provide any analysis as to why rules for game play and wager resolving differ from an algorithm, formula, or organization of human activity or behavior. The recited rules, like algorithms, dictate conditions precedent and subsequent, and like formulas, associate values with those conditions. Claims directed to an abstract idea in the form of game rules themselves preempt any future device that could be used to play the game, and thereby tend to impede innovation rather than promote it. *Contra* Request 6; *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S.Ct. 2347, 2354-5 (2014).

Similarly, Appellants fail to support the assertions made in consideration of the second step of the *Alice* framework. Request 8–9. Appellants do not provide any analysis as to why providing a conventional deck, or shuffling it in a conventional manner, amounts to "significantly more" under a requisite application of the *Alice* framework. Appellants are correct in that the claims do not recite a "computer." However, Appellants do not explain why their generic recitations should not be treated similarly to that generic recitation. Appellants quote language from a recent Federal Circuit decision, *DDR Holdings, LLC v. Hotels.com*, 773 F.3d 1245, 2014 WL 6845152 (Fed. Cir. 2014), but provide no explanation as to why providing and shuffling a deck of cards should be construed, not as a "drafting effort . . .," but as "significantly more," similar to a recitation directed to "a specific way to automate the creation of a composite web page

2

Appeal 2012-009025
Application 12/912,410

by an 'outsource provider' that incorporates elements from multiple sources
in order to solve a problem faced by websites on the Internet." *Id.* at
___,*12. We see no basis for similar treatment of these limitations to those
involved in *DDR Holdings*. We also see no basis for analogizing the steps
recited by Appellants to those of the exemplary claim in the Patent Office
training materials.[1] *See* Request 16.

      Whether a claim is drawn to patent-eligible subject matter under § 101
is an issue of law. In our original Decision, we provided a comprehensive
legal analysis under the relevant precedents. In doing so, we did not deviate
from any of the examination guidelines previously discussed. We
additionally designated our affirmance of the Examiner's rejection as a "new
ground" of rejection because we shifted the focus on one particular point,
from whether shuffling itself satisfies the machine-or-transformation test, to
whether the recitation of shuffling constituted no more than generic extra-
solution activity. As the reasons for the Office's conclusion have been fully
made of record, and Appellants have been afforded a fair opportunity to
respond, we have in no way precluded Appellants from seeking review on
the merits under 35 U.S.C. § 141. *Contra* Request 11.

      Appellants' request for rehearing has been granted to the extent that
we have reconsidered our original decision, but has been denied to the extent
that we do not modify our original decision.

## DECISION

The Examiner's rejection remains affirmed.

---

[1] http://www.uspto.gov/patents/law/exam/101_training_aug2012.pdf

Appeal 2012-009025
Application 12/912,410

No time period for taking any subsequent action in connection with this appeal may be extended under 37 C.F.R. § 1.136(a). *See* 37 C.F.R. § 1.136(a)(1)(iv).

<u>DENIED</u>

mls



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/912,410 | 10/26/2010 | Ray Smith | 321.010US1 | 1998 |

97462          7590          12/05/2014

Mark A. Litman & Associates, P.A.
7001 Cahill Road, Ste. 15A
Edina, MN 55439

| EXAMINER |
|---|
| LAYNO, BENJAMIN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3711 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 12/05/2014 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE PATENT TRIAL AND APPEAL BOARD

*Ex parte* RAY SMITH and AMANDA TEARS SMITH

Appeal 2012-009025
Application 12/912,410
Technology Center 3700

Before: CHARLES N. GREENHUT, JILL D. HILL, and
BRANDON J. WARNER, *Administrative Patent Judges*.

GREENHUT, *Administrative Patent Judge*.

DECISION ON APPEAL

STATEMENT OF CASE

Appellants appeal under 35 U.S.C. § 134 from a rejection of claims
1–18. App. Br. 5. We have jurisdiction under 35 U.S.C. § 6(b). An oral
hearing was held on November 4, 2014.

We affirm and designate this affirmance as a NEW GROUND OF
REJECTION.

The claims are directed to a blackjack variation. Claim 1, reproduced
below, is illustrative of the claimed subject matter:

1.    A method of conducting a wagering game comprising:

i) a dealer providing at least one deck of i) physical playing cards and shuffling the physical playing cards to form a random set of physical playing cards;

j) the dealer accepting at least one first wager from each participating player on a player game hand against a banker's/dealer's hand;

k) the dealer dealing only two cards from the random set of physical playing cards to each designated player and two cards to the banker/dealer such that the designated player and the banker/dealer receive the same number of exactly two random physical playing cards;

l) the dealer examining respective hands to determine in any hand has a Natural 0 count from totaling count from cards, defined as the first two random physical playing cards in a hand being a pair of 5's, 10's, jacks, queens or kings;

m) the dealer resolving any player versus dealer wagers between each individual player hand that has a Natural 0 count and between the dealer hand and all player hands where a Natural 0 is present in the dealer hand, while the dealer exposes only a single card to the players;

n) as between each player and the dealer where neither hand has a Natural 0, the dealer allowing each player to elect to take a maximum of one additional card or standing pat on the initial two card player hand, while still having seen only one dealer card;

o) the dealer/banker remaining pat within a first certain predetermined total counts and being required to take a single hit within a second predetermined total counts, where the first total counts range does not overlap the second total counts range;

p) after all possible additional random physical playing cards have been dealt, the dealer comparing a value of each designated player's hand to a final value of the banker's/dealer's hand wherein said value of the designated player's hand and the banker's/dealer's hand is in a range of zero to nine points based on a pre-established scoring system wherein aces count as one point, tens and face cards count as zero points and all other cards count as their face value and

2

wherein a two-digit hand total is deemed to have a value
corresponding to the one's digit of the two-digit total;

q) the dealer resolving the wagers based on whether the
designated player's hand or the banker's/dealer's hand is
nearest to a value of 0.

## REJECTION

Claims 1–18 are rejected under 35 U.S.C. § 101 as being directed to
non-statutory subject matter. Ans. 5.

## OPINION

### I. Claim grouping

Appellants argue all claims as a group. We select claim 1 as the
representative claim, and claims 2–18 stand or fall with claim 1. 37 C.F.R. §
41.37(c)(1)(vii).

### II. The Examiner's position and Appellants' response

The Examiner first (Ans. 6–7) analyzed the claims under the
"machine-or-transformation test," which is "a useful and important clue, an
investigative tool, for determining whether some claimed inventions are
processes under § 101." *Bilski v. Kappos*, 130 S.Ct. 3218, 3227 (2010); *see*
Ans. 6–7. The Examiner determined that the claims do not contain
sufficient recitations to satisfy the machine prong of the test. Ans. 6.
Insofar as the machine prong is concerned, Appellants appear to concede
that claim 1 does not satisfy this prong, as the only mention of a machine
discussed by Appellants is of a "shuffling machine," an element not required
by claim 1. *See* App. Br. 13–14; *see also* App. Br. 19 (arguing that the
claims pass the machine or transformation test even if machine factors are

3

Appeal 2012-009025
Application 12/912,410

excluded). Appellants do not appear to contest the Examiner's specific determinations that the recitations of "physical playing cards," or a deck of such cards, are insufficient to satisfy the machine prong of the machine-or-transformation test. As such, the Examiner's position in this regard stands uncontroverted and we adopt it as our own.

The Examiner went on to discuss the transformation prong of the machine-or-transformation test and determined that the "dealing of cards only move[s] the cards from one place to another, the cards remain the same and do not transform into a different deck of cards." Ans. 7. Appellants take issue with the Examiner's determination in this regard and argue that the Examiner improperly focused on the *cards* as opposed to the *deck*. App. Br. 15–16. Appellants contend that the "shuffling" step of claim 1 transforms the deck into a "random set of cards" and that random set of cards is further transformed by being divided and distributed to the dealer and players, i.e., "dealing" in claim 1. App. Br. 23. The Examiner disagrees that the recitation of shuffling and dealing constitutes a transformation that satisfies the transformation prong of the machine-or-transformation test (Ans. 10–11) and this constitutes a major point of disagreement between Appellants and the Examiner. Reply Br. 8–10.

The Examiner additionally determined that the claims are directed to non-statutory subject matter because they constitute "an attempt to claim a new set of rules for playing a card game" and that "a set of rules qualifies as an abstract idea." Ans. 7–8. The Examiner applied the Interim Guidance for Determining Subject Matter Eligibility for Process Claims in View of *Bilski v. Kappos* (Fed. Reg. Vol. 75, No. 143/Tuesday, July 27, 2010/Notices)

Appeal 2012-009025
Application 12/912,410

(hereinafter "Interim Guidance").[1] Ans. 8. "Human behavior,"[2] such as
"following rules or instructions," is listed among the examples of
"statement[s] of a general concept" that the Interim Guidance categorizes as
weighing against eligibility. Interim Guidance at pp. 1–2. The Examiner
additionally cited the Manual of Patent Examining Procedure ("MPEP")[3]
Section 2106, which has been subsequently (November 2013) revised to
expressly state that the Office considers "a game defined as a set of rules" as
not being directed to one of the statutory categories set forth in 35 U.S.C.
§ 101.

    On October 30, 2014, Appellants faxed to the Board additional
arguments in light of *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S.Ct. 2347
(2014). As our rules do not provide for additional briefing in this manner
unless requested by the Board, we treated Appellants' fax as a showing of
good cause to "rely on a new argument based upon a recent relevant decision
of either the Board or a Federal Court" under 37 C.F.R. § 41.47(e)(2) and
heard Appellants' arguments regarding *Alice, supra,* at the oral hearing
conducted on November 4, 2014, at 9:00 a.m. *See* Order Granting Request
to Present New Arguments of October 31, 2014.

    Appellants have not set forth any arguments, in the briefs or at the oral
hearing, disputing the Examiner's determination that claim 1 is directed to a

---

[1] Available at http://www.uspto.gov/patents/law/exam/bilski_guidance_
27jul2010.pdf.
[2] *See, e.g.,* Dyk, J., concurring, *In re Bilski*, 545 F.3d 943, 970–76 (Fed. Cir.
2008); Sotomayor, J., concurring, *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134
S.Ct. 2347, 2360–61 (2014).
[3] "While the MPEP does not have the force of law, it is entitled to judicial
notice as an official interpretation of statutes or regulations as long as it is
not in conflict therewith." *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1180
n.10 (Fed. Cir. 1995).

Appeal 2012-009025
Application 12/912,410

set of rules, or disputing that a set of rules constitutes a patent-ineligible abstract idea. Rather, Appellants, applying the criteria discussed in the Interim Guidance, maintain that the randomized shuffling of claim 1 is a meaningful, particular, and observable *transformation* of the *deck* of cards, which renders the subject matter of claim 1 patent eligible. App. Br. 14–17.

### III. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S.Ct. 2347 (2014)

The Interim Guidance applied by the Examiner was developed before the Supreme Court issued its decision in *Alice, supra*, further explaining the law in this area. The claims in *Alice* were directed to a "method of exchanging obligations as between parties." *Alice*, 134 S.Ct. at 2352 n.2. In *Alice*, the Supreme Court discussed its decision in *Mayo Collaborative Services v. Prometheus Labs., Inc.*, 132 S.Ct. 1289 (2012) and explained:

> In *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. ——, 132 S.Ct. 1289, 182 L.Ed.2d 321 (2012), we set forth a framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts. First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. *Id.*, at ——, 132 S. Ct., at 1296–1297. If so, we then ask, "[w]hat else is there in the claims before us?" *Id.*, at ——, 132 S.Ct., at 1297. To answer that question, we consider the elements of each claim both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application. *Id.*, at ——, 132 S.Ct., at 1298, 1297. We have described step two of this analysis as a search for an "'inventive concept'"—i.e., an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more

6

Appeal 2012-009025
Application 12/912,410

> than a patent upon the [ineligible concept] itself." *Id.*, at
> ——, 132 S.Ct., at 1294.

*Alice*, 134 S.Ct. at 2355.[4]  According to the discussion above, it first must be determined whether the claims at issue are directed to a patent-ineligible concept (such as an abstract idea) and, if so, it then must be determined whether there is something else in the claims that ensures that they are directed to significantly more than a patent-ineligible concept.

*III-A. Step one: Are the claims at issue are directed to a patent-ineligible concept?*

In *Alice*, the Supreme Court discussed its decision in *Bilski v. Kappos*, 130 S.Ct. 3218 (2010), and stated:

> It follows from our prior cases, and *Bilski* in particular, that the claims at issue here are directed to an abstract idea. Petitioner's claims involve a *method of exchanging financial obligations* between two parties using a third-party intermediary to mitigate settlement risk.

*Alice*, 134 S.Ct. at 2356 (emphasis added).

A wagering game is, effectively, a method of exchanging and resolving financial obligations based on probabilities created during the distribution of the cards.  Thus, the "method of conducting a wagering game," as recited in Appellants' independent claim 1, is akin to the "method of exchanging financial obligations" discussed in *Alice*.  The recited rules tell the players and the dealer what to do in response to a particular event or set of events.  Thus, these rules are similar to an instruction to follow a

---

[4] In a memo dated June 25, 2014, the USPTO provided guidance to examiners in applying *Alice*.  *See* "Preliminary Examination Instructions in view of the Supreme Court Decision in *Alice Corporation Pty. Ltd. v. CLS Bank International, et. al.* available at http://www.uspto.gov/patents/ announce/alice_pec_25jun2014.pdf.

Appeal 2012-009025
Application 12/912,410

formula or an algorithm to conduct the game and resolve the parties'
financial obligations. Like the presence of a formula or an algorithm,
Appellants' recited rules do not render the claimed idea any less abstract.
*See Alice*, 134 S.Ct. at 2356–59 (discussing cases involving formulas and
algorithms). Physical cards may be used to help the players and the dealer
effectuate the rules, but any randomly-distributed tokens or other similar
items could do the same. Therefore, when read as a whole, we agree with
the Examiner that independent claim 1 is directed to a set of rules for
conducting a wagering game which, for the reasons discussed above,
constitutes a patent-ineligible abstract idea. As noted in section II above,
Appellants have not disputed the Examiner's determination that the claim is
directed to a set of rules or that a set of rules constitutes a patent-ineligible
abstract idea.

*III-B. Step two: Is there something else in the claims that ensures that they
are directed to significantly more than a patent-ineligible concept?*

As we noted above, according to *Alice*, the question to be settled next
is whether claim 1 recites an element, or combination of elements, that is
enough to ensure that the claim is directed to significantly more than an
abstract idea. Essentially, Appellants' contention that the "shuffling" and
"dealing" aspects of claim 1 satisfy the transformation prong of the machine-
or-transformation test amounts to a contention that those shuffling and
dealing recitations ensure that claim 1 is directed to significantly more than
an abstract idea. The debate between the Examiner and the Appellants as to
whether shuffling a deck and dealing the cards of that deck constitute patent-
eligible transformations is not one that needs to be resolved to decide this
appeal because it is not on point.

8

Appeal 2012-009025
Application 12/912,410

Claim 1 is *not directed* to a method of shuffling or a method of
dealing. The claim is directed to a method of conducting a game. Even if
shuffling and dealing might, themselves, be considered statutory processes,
the machine-or-transformation test is not considered to be satisfied by the
recitation of even a statutory transformation, when that transformation
constitutes "insignificant [extra-]solution activity." *See In re Bilski*, 545 F.
3d 943, 957 (citations and quotations omitted). Rather, the "transformation
must be central to the purpose of the claimed process." *Id* at 962. The
purpose of the claimed process before us is not the shuffling and dealing of
cards; it is conducting the game. The Court's decision in *Alice* is in accord
with these principles.

Appellants do not dispute that shuffling and dealing cards are
conventional in the gambling art. Oral Hearing Transcript at 7. Appellants'
contention that whether or not these are conventional steps is not relevant to
a determination under § 101 (*id*.) is contrary to established precedent. *See
Alice*, 134 S.Ct. at 2357–60. Simply appending conventional steps, specified
in general terms, like "shuffling," or "dealing [a certain number of cards],"
which were known in the industry, is not enough to transform an abstract
idea into a patent-eligible invention. *See id.* These recitations are similar to
the recitation of a conventional "computer" discussed in *Alice*. The
shuffling and dealing of cards amounts to nothing significantly more than
instructions to a dealer and the players to apply the abstract idea of following
the rules of the wagering game. Shuffling, dealing cards, wagering, and
resolving wagers, as set forth in claim 1, taken individually or as an ordered
combination, are merely necessary and conventional steps in playing a
wagering card game. They constitute, pre- or post-, extra-solution activity,
and do not add enough to the claims to transform the recited methods into

9

Appeal 2012-009025
Application 12/912,410

patent-eligible subject matter. *Bilski v. Kappos,* 130 S.Ct. at 3230–31.

Patent eligibility should not "depend simply on the draftsman's art." *See Alice,* 134 S.Ct. at 2358–59 (quoting *Parker v. Flook,* 437 U.S. 584, 593 (1978)).

*Conclusion*

Although we have carefully considered all of Appellants' arguments, and the recent Supreme Court decision in *Alice,* we remain in agreement with the Examiner that claim 1 is directed to non-statutory subject matter. As we have modified the Examiner's reasoning somewhat in reaching this conclusion, we designate our affirmance of the Examiner's rejection as a new ground of rejection pursuant to 37 C.F.R. § 41.50(b) so as to afford Appellants the procedural options associated therewith, and to ensure Appellants have a fair opportunity to respond.

## DECISION

The Examiner's rejection is affirmed. We designate our affirmance as entering a new ground of rejection pursuant to 37 C.F.R. § 41.50(b).

37 C.F.R. § 41.50(b) also provides that Appellants, <u>WITHIN TWO MONTHS FROM THE DATE OF THE DECISION</u>, must exercise one of the following two options with respect to the new grounds of rejection to avoid termination of the appeal as to the rejected claims:

> (1) *Reopen prosecution.* Submit an appropriate amendment of the claims so rejected or new evidence relating to the claims so rejected, or both, and have the matter reconsidered by the Examiner, in which event the proceeding will be remanded to the Examiner. . . .

10

Appeal 2012-009025
Application 12/912,410

    (2) *Request rehearing.* Request that the proceeding be reheard under § 41.52 by the Board upon the same record. . . .

    No time period for taking any subsequent action in connection with this appeal may be extended under 37 C.F.R. § 1.136(a).  *See* 37 C.F.R. § 1.136(a)(1)(iv).


<u>AFFIRMED; 37 C.F.R. § 41.50(b)</u>


mls

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/912,410 | 10/26/2010 | Ray Smith | 321.010US1 | 1998 |

97462        7590        01/28/2015
Mark A. Litman & Associates, P.A.
7001 Cahill Road, Ste. 15A
Edina, MN 55439

| EXAMINER |
|---|
| LAYNO, BENJAMIN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3711 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 01/28/2015 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

**A-20**

UNITED STATES PATENT AND TRADEMARK OFFICE

———————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————————

*Ex parte* RAY SMITH and AMANDA TEARS SMITH

———————————

Appeal 2012-009025
Application 12/912,410
Technology Center 3700

———————————

Before:  CHARLES N. GREENHUT, JILL D. HILL, and
BRANDON J. WARNER, *Administrative Patent Judges*.


GREENHUT, *Administrative Patent Judge*.


DECISION ON REQUEST FOR REHEARING


STATEMENT OF CASE

This is a response to a Request for Rehearing ("Request") of the
Board's Decision of December 5, 2014 ("Decision").  Requests for
Rehearing are limited to matters overlooked or misapprehended by the Panel
in rendering the original decision.  *See* 37 C.F.R. § 41.52.


OPINION

Initially, we note that our rules do not provide for Appellants to
request an additional oral hearing or an *en banc* rehearing.  *See* Request 2.

Appeal 2012-009025
Application 12/912,410

Appellants first contend that the claimed subject matter, which the Examiner determined to be directed to rules of a game (Decision 4), is not directed to an abstract idea. Request 6–7. However, Appellants' arguments in this regard are nothing more than conclusory statements. Appellants do not dispute that game rules are the subject of the claims before us. Nor do Appellants provide any analysis as to why rules for game play and wager resolving differ from an algorithm, formula, or organization of human activity or behavior. The recited rules, like algorithms, dictate conditions precedent and subsequent, and like formulas, associate values with those conditions. Claims directed to an abstract idea in the form of game rules themselves preempt any future device that could be used to play the game, and thereby tend to impede innovation rather than promote it. *Contra* Request 6; *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S.Ct. 2347, 2354-5 (2014).

Similarly, Appellants fail to support the assertions made in consideration of the second step of the *Alice* framework. Request 8–9. Appellants do not provide any analysis as to why providing a conventional deck, or shuffling it in a conventional manner, amounts to "significantly more" under a requisite application of the *Alice* framework. Appellants are correct in that the claims do not recite a "computer." However, Appellants do not explain why their generic recitations should not be treated similarly to that generic recitation. Appellants quote language from a recent Federal Circuit decision, *DDR Holdings, LLC v. Hotels.com*, 773 F.3d 1245, 2014 WL 6845152 (Fed. Cir. 2014), but provide no explanation as to why providing and shuffling a deck of cards should be construed, not as a "drafting effort . . .," but as "significantly more," similar to a recitation directed to "a specific way to automate the creation of a composite web page

2

Appeal 2012-009025
Application 12/912,410

by an 'outsource provider' that incorporates elements from multiple sources in order to solve a problem faced by websites on the Internet." *Id.* at ___,*12. We see no basis for similar treatment of these limitations to those involved in *DDR Holdings*. We also see no basis for analogizing the steps recited by Appellants to those of the exemplary claim in the Patent Office training materials.[1] *See* Request 16.

Whether a claim is drawn to patent-eligible subject matter under § 101 is an issue of law. In our original Decision, we provided a comprehensive legal analysis under the relevant precedents. In doing so, we did not deviate from any of the examination guidelines previously discussed. We additionally designated our affirmance of the Examiner's rejection as a "new ground" of rejection because we shifted the focus on one particular point, from whether shuffling itself satisfies the machine-or-transformation test, to whether the recitation of shuffling constituted no more than generic extra-solution activity. As the reasons for the Office's conclusion have been fully made of record, and Appellants have been afforded a fair opportunity to respond, we have in no way precluded Appellants from seeking review on the merits under 35 U.S.C. § 141. *Contra* Request 11.

Appellants' request for rehearing has been granted to the extent that we have reconsidered our original decision, but has been denied to the extent that we do not modify our original decision.

DECISION

The Examiner's rejection remains affirmed.

---

[1] http://www.uspto.gov/patents/law/exam/101_training_aug2012.pdf

3

Appeal 2012-009025
Application 12/912,410

    No time period for taking any subsequent action in connection with this appeal may be extended under 37 C.F.R. § 1.136(a).  *See* 37 C.F.R. § 1.136(a)(1)(iv).

<u>DENIED</u>

mls

# United States Court of Appeals
# for the Federal Circuit
*In re: Smith,* 2015-1664

## CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by MARK A. LITMAN & ASSOCIATES, P.A., attorneys for Appellants to print this document.  I am an employee of Counsel Press.

On **June 25, 2015** counsel has authorized me to electronically file the foregoing (corrected) **Brief for Appellants** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

> Nathan K. Kelley, Solicitor
> Robert McBride
> Scott Weidenfeller
> United States Patent and Trademark Office
> Office of the Solicitor
> PO Box 1450, Mail Stop 8
> Alexandria, VA 22313
> 571-272-9035
> nathan.kelley@uspto.gov
> robert.mcbride@uspto.gov
> scott.weidenfeller@uspto.gov

Paper copies will also be mailed to the above principal counsel at the time paper copies are sent to the Court. Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court within the time provided in the Court's rules.  The brief was originally filed and served on June 23, 2015.

June 25, 2015

/s/ Robyn Cocho
Counsel Press

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

   X   The brief contains <u>10,504</u> words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

_____ The brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

   X   The brief has been prepared in a proportionally spaced typeface using <u>MS Word 2013</u> in a 14 point <u>Times New Roman</u> font or

_____ The brief has been prepared in a monospaced typeface using _____ _____in a ___ characters per inch_____ font.


<u>June 25, 2015</u>              <u>/s/ Mark A. Litman</u>_____
Date                              Mark A. Litman
                                    Mark A. Litman & Associates, P.A.
                                    7001 Cahill Road, Suite 15A
                                    Edina, MN 55439
                                    Telephone (Cell) 612-965-3755
                                    Facsimile: 952-832-9191
                                    malpatlaw@aol.com

                                    *Attorneys for Appellant*