Appeal No. 2015-1664
(Serial No. 12/912,410)

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

IN RE RAY SMITH AND AMANDA TEARS SMITH

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board.

BRIEF FOR APPELLEE – DIRECTOR OF
THE UNITED STATES PATENT AND TRADEMARK OFFICE

THOMAS W. KRAUSE
Acting Solicitor

SCOTT C. WEIDENFELLER
Acting Deputy Solicitor

ROBERT E. MCBRIDE
Associate Solicitor

*Office of the Solicitor* – Mail Stop 8
U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
571-272-9035

*Attorneys for the Director of the
United States Patent and
Trademark Office*

August 6, 2015

**Representative Claim**

1.      A method of conducting a wagering game comprising:

[a])    a dealer providing at least one deck of . . . physical playing cards and shuffling the physical playing cards to form a random set of physical playing cards;

[b])    the dealer accepting at least one first wager from each participating player on a player game hand against a banker's/dealer's hand;

[c])    the dealer dealing only two cards from the random set of physical playing cards to each designated player and two cards to the banker/dealer . . . ;

[d])    the dealer examining respective hands to determine in any hand has a Natural 0 count from totaling count from cards, defined as the first two random physical playing cards in a hand being a pair of 5's, 10's, jacks, queens or kings;

[e])    the dealer resolving any player versus dealer wagers between each individual player hand that has a Natural 0 count and between the dealer hand and all player hands where a Natural 0 is present in the dealer hand, while the dealer exposes only a single card to the players;

[f])    as between each player and the dealer where neither hand has a Natural 0, the dealer allowing each player to elect to take a maximum of one additional card or standing pat on the initial two card player hand, while still having seen only one dealer card;

[g])    the dealer/banker remaining pat within a first certain predetermined total counts and being required to take a single hit within a second predetermined total counts, where the first total counts range does not overlap the second total counts range;

[h])    after all possible additional random physical playing cards have been dealt, the dealer comparing a value of each designated player's hand to a final value of the banker's/dealer's hand . . . ;

[i])    the dealer resolving the wagers based on whether the designated player's hand or the banker's/dealer's hand is nearest to a value of 0.

A10-11.

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF THE ISSUE ....................................................................1

II.   STATEMENT OF THE CASE ....................................................................1

     A.    The Claimed Invention:  A Blackjack Game With Additional Wagering Options ................................................................................1

     B.    The Examiner And The Board Rejected The Claims Under 35 U.S.C. § 101 ........................................................................................3

III.  SUMMARY OF THE ARGUMENT ...........................................................6

IV.  ARGUMENT ..............................................................................................7

     A.    Standard Of Review ............................................................................7

     B.    The Examiner And The Board Correctly Concluded That Smith's Claim Is Directed To A Patent-Ineligible Abstract Idea .........7

          1.    The claims are directed to the abstract idea of a card game with a new rule ................................................................9

          2.    The claims do not recite "significantly more" than that abstract idea..........................................................................10

     C.    Smith's Complaints About USPTO Patent-Eligibility Guidance Do Not Alter The Outcome Of This Appeal.......................................13

V.   CONCLUSION ........................................................................................18

i

# TABLE OF AUTHORITIES

**Page**

<u>Cases</u>:

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) ...............*passim*

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
    788 F.3d 1371 (Fed. Cir. 2015) ...................................................................17

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
    133 S. Ct. 2107 (2013)...................................................................................8

*Bilski, In re*, 545 F.3d 943 (Fed. Cir. 2008) (en banc),
    *aff'd sub nom. Bilski v. Kappos*, 130 S. Ct. 3218 (2010) ..............................7

*Bilski v. Kappos*, 130 S. Ct. 3218 (2010) ...........................................3, 9, 10, 15

*BuySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014)............7, 8, 9, 10

*FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27 (1981) ............14

*OIP Techs., Inc. v. Amazon.com, Inc.*, No. 2012-1696,
    2015 WL 3622181 (Fed. Cir. June 11, 2015)........................................15, 17

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012).........................................................................11, 17

*Mikkilineni v. Stoll*, 410 F. App'x 311 (Fed. Cir. 2010) (non-precedential)......14

*Parker v. Flook*, 437 U.S. 584 (1978) ...........................................................9, 15

*Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005
    (Fed. Cir. 2014) (non-precedential)................................................7, 9, 10, 15

*Versata Dev. Group v. SAP Am., Inc*, No. 2014-1194,
    2015 WL 4113722 (Fed. Cir. July 9, 2015) .................................................13

*Webb, In re*, No. 2014-1652, 2015 WL 3980296
    (Fed. Cir. July 1, 2015) (non-precedential) ..................................................10

# TABLE OF AUTHORITIES (continued)

**Page**

**Statutes:**

5 U.S.C. § 553(b) ................................................................14

35 U.S.C. § 101 ............................................................*passim*

35 U.S.C. § 134(a) ............................................................13

35 U.S.C. § 141 ................................................................13

**Other Authority:**

July 2015 Update:  Subject Matter Eligibility, *available at*
http://www.uspto.gov/sites/default/files/documents/
ieg-july-2015-update.pdf ................................................14, 15, 16

## STATEMENT OF RELATED CASES

The Director is not aware of any other appeal in connection with this case that has previously been before this Court, or that is currently pending in any other court.  The Director is also unaware of any other case pending in this or any other court that will directly affect, or be directly affected by, this Court's decision in this appeal.

## I.    STATEMENT OF THE ISSUE

Smith seeks a patent on a "method of conducting a wagering game" that is a variation on the traditional game of blackjack. The Examiner and the Board concluded that the claims were patent-ineligible under the abstract idea exception to 35 U.S.C. § 101. The question presented is whether a method of playing a conventional card game with a new set of rules is eligible for patenting under § 101.

## II.    STATEMENT OF THE CASE

### A.    The Claimed Invention:  A Blackjack Game With Additional Wagering Options

On October 26, 2010, Ray Smith and Amanda Tears Smith (collectively, "Smith") filed a patent application directed to a "Blackjack Variation." A258-77.[1] The application, Serial No. 12/912,410, described that "[t]he present invention relates to a wagering game utilizing real or virtual standard playing cards." A258, l. 6. The application explained that Smith invented "a new game of chance that is easy to learn and play," A259, l. 8, which it called "Pacific Rim Blackjack," A260, ll. 28-29. Smith explained that "existing games of chance" include blackjack and Baccarat. A258, ll. 12-14. Smith further described an existing "baccarat variant of a method of conducting a wagering game" in which

---

[1]    Citations to "A___" refer to the Joint Appendix. Citations to "Br. at __" refer to Smith's brief.

cards are assigned point values that are summed after a hand is dealt, with wagers resolved based on which hand has a sum whose last digit "is nearest to a value of nine." A258, l. 21 - A259, l. 6.

Representative claim 1 of the Smith application[2] recites a similar variant of a method of conducting a wagering game, except the wagers are resolved based on either (1) whether a hand has a "Natural 0 count," which is defined as "a pair of 5's, 10's, jacks, queens or kings"; or (2) which hand has a sum whose last digit is nearest to a value of zero:

1.    A method of conducting a wagering game comprising:

[a])    a dealer providing at least one deck of . . . physical playing cards and shuffling the physical playing cards to form a random set of physical playing cards;
[b])    the dealer accepting at least one first wager from each participating player on a player game hand against a banker's/dealer's hand;
[c])    the dealer dealing only two cards from the random set of physical playing cards to each designated player and two cards to the banker/dealer such that the designated player and the banker/dealer receive the same number of exactly two random physical playing cards;
[d])    the dealer examining respective hands to determine in any hand has a Natural 0 count from totaling count from cards, defined as the first two random physical playing cards in a hand being a pair of 5's, 10's, jacks, queens or kings;
[e])    the dealer resolving any player versus dealer wagers between each individual player hand that has a Natural 0 count and between the dealer hand and all player hands where a Natural 0 is

---

[2]    The Board found that claim 1 is representative, A11, and Smith addresses only claim 1 in his opening brief in this Court, *see, e.g.*, Br. at 23-24.

present in the dealer hand, while the dealer exposes only a single card to the players;

[f]) as between each player and the dealer where neither hand has a Natural 0, the dealer allowing each player to elect to take a maximum of one additional card or standing pat on the initial two card player hand, while still having seen only one dealer card;

[g]) the dealer/banker remaining pat within a first certain predetermined total counts and being required to take a single hit within a second predetermined total counts, where the first total counts range does not overlap the second total counts range;

[h]) after all possible additional random physical playing cards have been dealt, the dealer comparing a value of each designated player's hand to a final value of the banker's/dealer's hand wherein said value of the designated player's hand and the banker's/dealer's hand is in a range of zero to nine points based on a pre-established scoring system wherein aces count as one point, tens and face cards count as zero points and all other cards count as their face value and wherein a two-digit hand total is deemed to have a value corresponding to the one's digit of the two-digit total;

[i]) the dealer resolving the wagers based on whether the designated player's hand or the banker's/dealer's hand is nearest to a value of 0.

A10-11; *see also* A259, ll. 13-24 (Summary of the Invention).

**B.    The Examiner And The Board Rejected The Claims Under 35 U.S.C. § 101**

The examiner rejected claims 1-18 as reciting non-statutory subject matter

under 35 U.S.C. § 101.[3]  A98-103; *see generally* A95-107 (Examiner's Answer).

The examiner, applying the then-pertinent standard under *Bilski v. Kappos*, 130

S. Ct. 3218 (2010), concluded that the claims are patent-ineligible.  First, the

---

[3]    The examiner allowed claims 20 and 21.  *See* A97.  Claim 19 was canceled.  *See* A223.

examiner determined that "[t]he claimed invention does not recite a sufficient tie to a machine or apparatus" because "[t]he claimed apparatus of 'one deck of physical playing cards' is merely an object upon which the process (method steps) operates, and does not by itself implement the process (method steps)." A100 (emphasis omitted).  Moreover, the examiner determined, "there is no transformation in these method claims."  A101 (emphasis omitted).  Instead, the examiner concluded, the claims represented "an attempt to claim a new set of rules for playing a card game," which "qualifies as an abstract idea."  A102 (emphasis omitted).  The examiner considered several factors in his analysis, ultimately concluding that "the factors in this case weighing against patent eligibility far outweigh the factors weighing toward patent eligibility."  A103 (emphasis omitted); *see generally* A151-57 ("Interim *Bilski* Guidance").

The Board affirmed the rejection.  The Board selected claim 1 as representative of the claims on appeal.  A11.  The Board noted that Smith "ha[d] not set forth any arguments, in the briefs or at the oral hearing, disputing the Examiner's determination that claim 1 is directed to a set of rules, or disputing that a set of rules constitutes a patent-ineligible abstract idea."  A13-14.  Instead, Smith "maintain[ed] that the randomized shuffling of claim 1 is a meaningful, particular, and observable *transformation* of the *deck* of cards, which renders the subject matter of claim 1 patent eligible."  A14.

Applying the two-step test of *Alice Corp. Pty. Ltd. v. CLS Bank International*, 134 S. Ct. 2347 (2014), the Board rejected Smith's arguments. *First*, the Board agreed with the examiner's determination "that independent claim 1 is directed to a set of rules for conducting a wagering game which . . . constitutes a patent-ineligible abstract idea." A16.  The Board reached this conclusion because it determined that "the 'method of conducting a wagering game,' as recited in [Smith's] independent claim 1, is akin to the 'method of exchanging financial obligations' discussed in *Alice*."  A15.

*Second*, the Board determined that claim 1 did not "recite[] an element, or combination of elements, that is enough to ensure that the claim is directed to significantly more than an abstract idea." A16.  The Board determined that "[t]he debate between the Examiner and [Smith] as to whether shuffling a deck and dealing the cards of that deck constitute patent-eligible transformations is not one that needs to be resolved to decide this appeal because it is not on point." *Id.* Instead, the Board noted that Smith "d[id] not dispute that shuffling and dealing cards are conventional in the gambling art," and it determined that the "[s]huffling, dealing cards, wagering, and resolving wagers, as set forth in claim 1, taken individually or as an ordered combination, are merely necessary and conventional steps in playing a wagering card game." A17.  They therefore did not "add enough to the claims" to render them patent-eligible.  *Id.*

The Board designated its affirmance as a new ground of rejection because it relied on *Alice*, but the examiner had relied on the "machine-or-transformation" test. A23; *see* A18. The Board therefore permitted Smith to request rehearing. Smith did so, and the Board declined to modify its decision on rehearing. A23. *First*, the Board rejected Smith's arguments that the claims were not directed to an abstract idea because Smith provided "nothing more than conclusory statements" and "d[id] not dispute that game rules are the subject of the claims before us." A22. The Board thus determined that there was no reason "as to why rules for game play and wager resolving differ from an algorithm, formula, or organization of human activity or behavior," all of which are abstract ideas. *Id.* *Second*, the Board determined that there was no reason "as to why providing a conventional deck, or shuffling it in a conventional manner, amounts to 'significantly more' under a requisite application of the *Alice* framework." *Id.*

Smith then appealed the Board's decision to this Court.

## III.   SUMMARY OF THE ARGUMENT

The Supreme Court's and this Court's recent patent-eligibility jurisprudence readily resolves this appeal. Smith does not dispute that claim 1 is directed to new rules for a card game, which is an abstract idea. Smith also admits that the only physical limitation recited in the claim is a deck of cards, which is a conventional element used in card games. Such conventional elements

do not provide the "inventive concept" precedent requires for transforming a patent-ineligible abstract idea into a patent-eligible practical application of that idea. This Court should affirm the Board's conclusion that claim 1 falls within the abstract idea exception to 35 U.S.C. § 101.

## IV. ARGUMENT

### A. Standard Of Review

"Whether a claim is drawn to patent-eligible subject matter under § 101" is a question of law this Court reviews *de novo*. *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008) (en banc), *aff'd sub nom. Bilski v. Kappos*, 130 S. Ct. 3218 (2010).

### B. The Examiner And The Board Correctly Concluded That Smith's Claim 1 Is Directed To A Patent-Ineligible Abstract Idea

The resolution of this appeal is straightforward under *Alice*. *See BuySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014); *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1006 (Fed. Cir. 2014) (non-precedential). The claimed invention involves a new way of playing a "wagering game" involving "standard playing cards." A258, l. 6. Smith's method of managing a card game with new rules is no more patent-eligible than Planet Bingo's method of "managing a game of bingo." *Planet Bingo*, 576 F. App'x at 1008.

The Supreme Court has long recognized "an important implicit exception" to the categories of patent-eligible subject matter set forth in 35 U.S.C. § 101:

7

"Laws of nature, natural phenomena, and abstract ideas are not patentable."
*Alice*, 134 S. Ct. at 2354 (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)) (internal quotation marks and alterations omitted).  The pertinent exception in this appeal is the "abstract idea" exception.  Smith criticizes *Alice* as involving a "methodology [that] evidences a serious legal deficiency," Br. at 16, but, even if so, *Alice* is binding precedent.  Smith also asserts that the Supreme Court has "fail[ed] to provide adequate guidelines for the determination of patent-eligible subject matter," Br. at 8, but Smith does not even attempt to address any of this Court's precedent applying *Alice*.  The Board correctly concluded that Smith's claims are patent-ineligible under *Alice* and this Court's precedent.

Even claims that do not "directly read[] on" the abstract idea exception because they recite more than a bare abstract idea, such as a "physical thing" or "physical acts" must still be analyzed further for patent-eligibility.  *BuySAFE*, 765 F.3d at 1353.  Thus, it does not matter that Smith's claims "recite distinct physical steps."  Br. at 22.  Rather, as *BuySAFE* recognized, *Alice* sets forth a "two-stage inquiry" where a claim involves both an abstract idea and physical components:

> [A] claim falls outside section 101 if (a) it is "directed to" matter in one of the three excluded categories and (b) "the additional elements" do not supply an "inventive concept" in the physical realm of things and acts—a "new and useful application" of the

ineligible matter in the physical realm—that ensures that the patent
is on something "significantly more than" the ineligible matter itself.

*Id.* (quoting *Alice*, 134 S.Ct. at 2355, 2357 (internal quotation marks omitted));

*see also* A297-302 ("2014 Interim Guidance").  Smith's claims do not survive the

*Alice* two-step inquiry, as explained below.

### 1.    The claims are directed to the abstract idea of a card game with a new rule

Smith does not dispute in this Court, nor did Smith dispute before the

Board, "that claim 1 is directed to a set of rules, or . . . that a set of rules

constitutes a patent-ineligible abstract idea."  A13-14.  As the Board determined,

"a set of rules for conducting a wagering game . . .  constitutes a patent-ineligible

abstract idea."  A16.  The Board determined that the set of rules underlying claim

1 were "akin to the 'method of exchanging financial obligations' discussed in

*Alice*," A15 (quoting *Alice*, 134 S. Ct. at 2356), and that they did not "differ from

an algorithm, formula, or organization of human activity or behavior," A22.  *See*

*Alice*, 134 S. Ct. at 2356 (noting that the risk hedging involved in *Bilski* was

patent-ineligible because "it is a method of organizing human activity"); *Parker*

*v. Flook*, 437 U.S. 584, 589 (1978) (concluding "that an algorithm, or

mathematical formula, is like a law of nature" and, therefore, patent-ineligible).

Smith's claims thus are like those in *Planet Bingo*, which recited methods

of "managing a game of bingo."  576 F. App'x at 1008.  *Planet Bingo* held (albeit

in a non-precedential decision) that such claims are "directed to 'abstract ideas'" because they are similar to the (patent-ineligible) claims in *Alice*, which recited "'mitigating settlement risk' in 'financial transactions,'" *id.* (quoting *Alice*, 134 S. Ct. at 2356-57), and *Bilski*, which recited "'risk hedging' during 'consumer transactions,'" *id.* (quoting *Bilski*, 130 S. Ct. at 3231). Likewise, this Court affirmed, without opinion, a Board decision rejecting under § 101 claims directed to a method of playing a game of poker. *In re Webb*, No. 2014-1652, 2015 WL 3980296 (Fed. Cir. July 1, 2015) (non-precedential). Smith does not attempt to distinguish the underlying abstract idea in his claims from the abstract ideas in *Planet Bingo* or *Webb*. Nor could Smith do so.

### 2. The claims do not recite "significantly more" than that abstract idea

Smith's primary argument is that claim 1 is not directed to "rules *per se*," Br. at 24, but that does not save the claim under § 101. Smith correctly asserts that claim 1 includes "multiple physical steps on an article, the set of playing cards," *id.*, but that is insufficient under *Alice*. *Alice* requires that the claims recite "significantly more than" the abstract idea in a way that satisfies *Alice*'s requirement for an "'inventive concept' in the physical realm of things and acts— a 'new and useful application' of the ineligible matter in the physical realm." *BuySAFE*, 765 F.3d at 1353. Smith offers nothing beyond a deck of "standard playing cards," A258, used for "side bets and other events related to blackjack,"

which "is one of the two most significant revenue-producing playing card-based wagering games banked by casinos," Br. at 4. Blackjack, by Smith's admission, is well-understood. *See Alice*, 134 S. Ct. at 2359 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). It is routine. *See id.* It is conventional. *See id.*

Smith acknowledges that the only difference between the claimed card game and the "conventional methodology" employed in blackjack is the additional "wagering game" involving the cards initially dealt. *See* A258 (referring to blackjack as an "existing game[] of chance"); *id.* (describing "a baccarat variant" with a similar additional wagering game); A259 (describing the claimed blackjack variant in similar terms). But that addition is an abstract idea, so it cannot provide the "significantly more" *Alice* requires. None of the remaining limitations – even if they are "physical," Br. at 30 – can either, because they are all "conventional." *Alice*, 134 S. Ct. at 2357 ("'Simply appending conventional steps, specified at a high level of generality,' [is] not '*enough*' to supply an 'inventive concept.'" (quoting *Mayo*, 132 S. Ct. at 1300, 1297, 1294) (emphasis in original)). If saying "apply it with a computer" is not sufficient to confer patent eligibility, *see id.* at 2358, saying "apply it with a deck of cards" is likewise insufficient.

11

Smith identifies no "inventive concept" in the deck of cards itself. To the contrary, Smith describes the claimed deck of cards as "standard." A258. Smith likewise cannot identify an "inventive concept" in the "steps of randomizing an original set of playing cards, [or] distributing specifically-sized subsets of the playing cards to different locations at different times," Br. at 30, because those steps are simply the well-known "shuffling" and "dealing" of cards, A17 (noting that Smith did not "dispute that shuffling and dealing cards are conventional in the gambling art"). The Board correctly concluded that appending such conventional steps "is not enough to transform an abstract idea into a patent-eligible invention," finding that such conventional steps are "similar to the recitation of a conventional 'computer' discussed in *Alice*." A17.

At bottom, as the Board determined, the cards are not even connected to the claimed method in a meaningful way. *Id.* ("The purpose of the claimed process before us is not the shuffling and dealing of cards; it is conducting the game."). For example, Smith does not dispute the Board's contention that other randomly distributed elements, such as tokens, could be used to effectuate the claimed game rules. *See* A16; Br. at 33 (arguing only that the § 101 analysis should not change, regardless of the Board's determination that "other randomly distributed elements could be used"). In the end, Smith does not claim an invention that is eligible for patenting under *Alice* or this Court's precedent.

**C.** **Smith's Complaints About USPTO Patent-Eligibility Guidance Do Not Alter The Outcome Of This Appeal**

Smith complains that the USPTO's 2014 Interim Guidance sets forth "faulty guidelines" that "improperly apply and even extend the inadequate guidelines suggested in *Alice*," Br. at 8, but that guidance is not at issue in this appeal from the Board's decision addressing Smith's application. *See* 35 U.S.C. § 141(a) ("An applicant who is dissatisfied with the final decision in an appeal to the Patent Trial and Appeal Board under section 134(a) may appeal the Board's decision to the United States Court of Appeals for the Federal Circuit."). Contrary to Smith's suggestion, Br. at 41, this appeal does not – and cannot – facially challenge the USPTO's guidance under the Administrative Procedure Act ("APA"). *See, e.g.*, *Versata Dev. Group v. SAP Am., Inc*, No. 2014-1194, 2015 WL 4113722, at *7 (Fed. Cir. July 9, 2015) (describing the distinction between "the question of the availability of immediate 'appeal'" under 35 U.S.C. § 141 and "the question of 'review' (in the course of bringing other actions, such as . . . APA actions in district court)").

Even if this Court could review the 2014 Interim Guidance in this appeal, it should not do so. *First*, Smith is incorrect in asserting that the guidance is "substantive." Br. at 39-40. To the contrary, the guidance expressly states: "This Interim Eligibility Guidance does not constitute substantive rulemaking and does not have the force and effect of law." A288. Instead, the guidance

"sets out the Office's interpretation of the subject matter eligibility requirements of 35 U.S.C. 101 in view of recent decisions by the Supreme Court and the U.S. Court of Appeals for the Federal Circuit" for the benefit of the public and USPTO personnel, *id.*, so it is interpretative, *see* 5 U.S.C. § 553(b); *Mikkilineni v. Stoll*, 410 F. App'x 311, 313 (Fed. Cir. 2010) (non-precedential) (holding that a precursor to the Interim *Bilski* Guidance was "interpretive, rather than substantive"). The guidance thus does not conflict with the Supreme Court's statement that "the courts are the final authorities on issues of statutory construction." Br. at 41 (quoting *FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 32 (1981)). It is also "consistent with established precedent." Br. at 39.

Second, the USPTO continues to refine its interpretation of *Alice* based on developments in this Court's precedent. *See* July 2015 Update:  Subject Matter Eligibility, *available at* http://www.uspto.gov/sites/default/files/documents/ieg-july-2015-update.pdf (last visited August 6, 2015) ("July 2015 Updated Guidelines"). Review of a version of USPTO guidance that has since been updated would not be warranted. Moreover, the claims at issue would not be patentable under the revised USPTO guidance, as it maintains, just as previous USPTO guidance did, that game rules are abstract ideas. *See id.* at 4 (describing

*Planet Bingo*'s holding that "managing a game of Bingo" is an example of an

abstract idea).

Smith's argument that the Board "improperly appl[ied] extreme and faulty

analogies to apply *Alice*" to Smith's claim likewise fails. The Board explained

that Smith had failed to "provide any analysis as to why game rules for game

play and wager resolving differ from an algorithm, formula, or organization of

human activity or behavior." A22. The Board thus concluded that game rules –

like algorithms, formulas, and methods of organizing human activity or behavior

– are abstract ideas because they could not be distinguished from concepts the

Supreme Court has held are abstract ideas in *Alice* and *Flook*. *See id.*

That is not a faulty analogy; it is an appropriate way of determining

whether a claim is directed to an abstract idea. *See, e.g.*, *Alice*, 134 S. Ct. at 2356

(determining that "the concept of intermediated settlement" at issue in *Alice* was

an abstract idea because it was "[l]ike the risk hedging in *Bilski*"); *OIP Techs.,*

*Inc. v. Amazon.com, Inc.*, No. 2012-1696, 2015 WL 3622181, at *3 (Fed. Cir.

June 11, 2015) (determining that the "concept of 'offer based pricing'" is an

abstract idea because it "is similar to other 'fundamental economic concepts'

found to be abstract ideas by the Supreme Court and this court"); *see also* July

2015 Updated Guidelines at 3 (instructing examiners "to refer to the body of case

law precedent in order to identify abstract ideas by way of comparison to

concepts already found to be abstract"); *id.* at 7 (explaining that this approach

"follows the analysis used by the Supreme Court and the Federal Circuit").  As

Smith has failed to provide any analysis as to why rules for game play and wager

resolving meaningfully differ from the abstract ideas of algorithms, formulas, and

methods of organizing human activity or behavior as articulated by the Supreme

Court in *Alice*, it is difficult to accept Smith's argument that the Board's analogy

of the claimed rules for game play to such abstract ideas was in any way faulty or

"absurd."  Br. at 35.

Finally, Smith's attempt to distinguish *Alice* based on "the scope of

technology in the claims on Appeal" is flawed.  Br. at 37.  Smith asserts that "[i]t

is beyond reason to assert that claiming a wagering process with specified

movement and distribution of physical playing cards to implement a wagering

event should be a concern to 'monopolization of the basic tools of scientific and

technological work.'"  *Id.*  This assertion is difficult to square with Smith's

repeated assertion that claim 1 involves "gaming technology," Br. at 11, 13, 17,

19, 28, 43; *see also id.* at 10, 20, 26, 34 (all addressing the claimed

"technology"), or Smith's "Statement of the Technology Facts" addressing

blackjack and other wagering games, Br. at 3-6.  It is likewise difficult to square

with Smith's assertions that the claimed game utilizes "standard playing cards,"

A258, and that "a physical process transforming a set of playing cards is legally required during the wagering events," Br. at 4.

Moreover, Smith's assertion regarding monopolization is undermined by his statement that "Blackjack (or Twenty-one) is one of the two most significant revenue-producing playing card-based wagering games banked by casinos (the other being baccarat)." Br. at 4. To the extent Smith seeks to argue that claim 1 does not preempt all card games, this Court has made clear that the fact "that the claims do not preempt all" uses of the abstract idea "do not make them any less abstract." *OIP Techs.*, 2015 WL 3622181, at *3.

In any event, *Alice* made clear that, "in applying the § 101 exception," the focus is on distinguishing "between patents that claim the building blocks of human ingenuity" on the one hand "and those that integrate the building blocks into something more, thereby transforming them into a patent-eligible invention" on the other, not on directly evaluating whether such "monopolization" is present. 134 S. Ct. at 2354 (quoting *Mayo*, 132 S. Ct. at 1294, 1303) (internal quotation marks and alterations omitted); *see also Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015) ("Where a patent's claims are deemed only to disclose patent ineligible subject matter under the *Mayo* framework, as they are in this case, preemption concerns are fully addressed and made moot."). Smith's claim failed the second prong of the *Alice* test, so it did

17

not include the "something more" *Alice* requires.  It is therefore ineligible under § 101.

## V.     CONCLUSION

The Board and the examiner correctly determined that Smith's claims are not directed to patent-eligible subject matter under 35 U.S.C. § 101 because they run afoul of the "abstract ideas" exception to § 101.  This Court therefore should affirm the Board's decision.

Respectfully submitted,

August 6, 2015

/s/ Scott C. Weidenfeller
THOMAS W. KRAUSE
Acting Solicitor

SCOTT C. WEIDENFELLER
Acting Deputy Solicitor

ROBERT E. MCBRIDE
Associate Solicitor

*Office of the Solicitor* – Mail Stop 8
U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
571-272-9035

*Attorneys for the Director of the
United States Patent and
Trademark Office*

# CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of August, 2015, I electronically filed

the foregoing BRIEF FOR APPELLEE – DIRECTOR OF THE UNITED STATES

PATENT AND TRADEMARK OFFICE using the Court's CM/ECF filing system.

Counsel for the Appellant was electronically served via e-mail per Fed. R. App. P.

25 and Fed. Cir. R. 25(a) and 25(b).

/s/ Scott C. Weidenfeller
Acting Deputy Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, VA 22313-1450
571-272-9035